## CRYSTAL SPRING DISTILLERY CO. *v.* COX.

*(Circuit Court of Appeals, Sixth Circuit. January 16, 1892.)*

**1. INTERNAL REVENUE—BONDED WAREHOUSE—EXCESSIVE LOSS.**

Rev. St. U. S. § 3221, abating the tax on distilled spirits destroyed while in a bonded warehouse "by accidental fire or other casualty," does not include a loss by the warping of barrels from unusual and excessive summer heat, abnormal evaporation, caused by such heat, or the existence of undiscoverable worm-holes in the barrels.

**2. SAME—ALLOWANCE FOR LOSS.**

When the commissioner of internal revenue regards a loss from such causes as excessive, he has authority, under Act Cong. May 28, 1880, § 4, to order the withdrawal of the spirits from the warehouse before the three years of the bond have expired, and to require payment of the tax on the quantity originally entered, without making any allowance under section 17 of said act for the loss, even though it occurred without the fraud or negligence of the owner.

47 Fed. Rep. 693, affirmed.

In Error to the Circuit Court of the United States for the District of Kentucky.

Petition by the Crystal Spring Distillery Company against Attilla Cox, as collector of internal revenue, to recover taxes paid. A demurrer to the petition was sustained, and the cause dismissed. Plaintiff brings error. Affirmed.

*Walter Evans,* for plaintiff in error.

*Geo. W. Jolly,* U. S. Dist. Atty., for defendant in error.

Before JACKSON, Circuit Judge, and SAGE and SWAN, District Judges.

JACKSON, Circuit Judge. The writ of error in this case is prosecuted to revise the judgment of the circuit court sustaining the demurrer to the petition and dismissing plaintiff's suit. The case presented by the petition is in brief this: In 1886 and 1887 the plaintiff, as a distiller in the fifth district of Kentucky, entered for deposit in its bonded warehouse, under and in accordance with the internal revenue laws of the United States, from time to time, 108 packages of whisky, containing by the original gauge made at the date of said entry 4,936 gallons, or over 40 wine gallons to each package. At the respective dates of entering said packages for deposit in said warehouse, plaintiff, as required by law, gave bond, with surety, for the payment of the 90 cents gallon tax thereon due the United States three years thereafter; that being the period under the law during which the whisky could remain in bond, unless its withdrawal was sooner required by the commissioner of the internal revenue. In the summer of 1888, before the expiration of the three years bonded period, the commissioner of internal revenue instructed the defendant, Cox, who was then and during the year 1888 a collector of internal revenue in and for the said fifth district of Kentucky, to require of the plaintiff the immediate withdrawal of said packages of whisky from the warehouse, and the payment of the 90 cents tax upon each gallon thereof, as ascertained by the original gauge made at the time of deposit, and without any allowance for losses occurring while in said warehouse,

Thereafter the commissioner of internal revenue, on July 1, 1888, made an assessment against the plaintiff for the full sum of 90 cents per gallon on the 4,936 gallons of whisky as originally gauged, amounting to the sum of $4,442.40. This assessment was, in August, 1888, placed in the hand of defendant, as collector of the district, for enforcement and collection, and was paid by plaintiff in November, 1888, under protest and compulsion. From a regauge, made early in September, 1888, at plaintiff's instance, but without authority or direction from the commissioner of internal revenue, it appeared that the loss from said 108 packages up to that time, or between the date of entry for deposit in warehouse and September 6, 1888, was, in the aggregate, 635 gallons. It is claimed in the petition that plaintiff was not properly chargeable with the tax of 90 cents per gallon on this 635 gallons of lost spirits, amounting to $571.50, which was included in the sum $4,442.40, which it was required to pay on the whole 4,936 gallons originally entered for deposit. Application to the commissioner of internal revenue to refund said sum of $571.50 as improperly taxed upon said 635 gallons of lost whisky having been refused, the plaintiff brought this suit against the defendant to recover said amount, with interest from November 24, 1888. It appears from the petition that the action of the commissioner of internal revenue in requiring the withdrawal from warehouse of the 108 packages of distilled spirits was based on the excessive loss therein, and was had under the provision of section 4 of the act of May 28, 1880, (21 St. p. 146.) The plaintiff, in its petition, "states it to be the fact that, while the said losses from each and every one of said packages had been excessive when said instructions [for their withdrawal] were given, yet said losses occurred by the destruction of all of said spirits so lost by accidental casualties, viz., from wastage and injury to the barrels containing said spirits, caused by excessive and unusual heat in the summer of 1887, from abnormal evaporation from said packages, caused by said heat, and from undiscoverable worm-holes in the barrels containing said spirits, all without any fraud, collusion, or negligence of the plaintiff, who was the owner of all of the said spirits, and because of said fact the said commissioner of internal revenue was without power or authority lawfully to give the said instructions, [for withdrawal of the whisky,] or to make the said assessment of said taxes," etc.

On the state of facts thus set forth the plaintiff sought to recover of defendant said sum of $571.50, with interest, as having been illegally exacted of it on the 635 gallons of whisky, lost without its fault. The defendant interposed a general demurrer, which was sustained by the circuit court, and the petition dismissed, with costs. It is assigned for error that the court erred in sustaining said demurrer and in dismissing the suit. It is claimed for the plaintiff in error that the commissioner of internal revenue had no lawful jurisdiction, power, or authority to compel the withdrawal of the spirits and the payment of the tax thereon until fully three years has elapsed from the time the same were deposited in the warehouse; that, if mistaken in this, still, the plaintiff, being without fault, was entitled to an allowance for the 635 gallons lost under the

facts stated; and that the $571.50 tax collected thereon was illegal, unlawful, excessive, and unjust, and, having been paid under protest, may be recovered in this action.    Whether the commissioner of internal revenue had the authority to require the withdrawal of the whisky before the expiration of three years from date of entry in warehouse, and the payment of the tax thereon according to the original gauge when entered for deposit in the warehouse, without making any allowance for the 635 gallons lost while so deposited from the causes alleged in the petition, must be determined by reference to several sections of the internal revenue law, which should be considered and construed together.    By section 3248, Rev. St., distilled spirits are defined, "and the tax shall attach to this substance [thus defined] as soon as it is in existence as such." By section 3251, as amended by the act of March 3, 1875, (18 St. p. 339,) "there shall be levied and collected on all distilled spirits    *    *    * a tax of ninety cents on each proof gallon, or wine gallon when below proof, to be paid by the distiller, owner, or persons having possession thereof before the removal from the distillery bonded warehouse."    By section 3293, as amended by the act of May 28, 1880, (21 St. p. 145,) it is required that "the said distiller or owner shall at the time of making said entry [in warehouse] give his bond    *    *    *    conditioned that the principal named in said bond shall pay the tax on the spirits as specified in the entry, or cause the same to be paid, before removal from said distillery warehouse, and within three years from date of said entry."    The 90 cents per gallon tax being thus fixed on all distilled spirits as soon as the same is "in existence" and entered in bonded warehouse, it was provided by section 3221, Rev. St., that the secretary of the treasury should have authority to make an allowance for certain losses of the spirits while in bond, as follows:

"The secretary of the treasury, upon the production to him of satisfactory proof of the actual destruction by accidental fire or other casualty, and without any fraud, collusion, or negligence of the owner thereof, of any distilled spirits while the same remained in the custody of any officer of internal revenue in any distillery warehouse or bonded warehouse of the United States, and before the tax thereon has been paid, may abate the amount of internal taxes accruing thereon, and may cancel any warehouse bond, or enter satisfaction thereon, in whole or in part, as the case may be."

By the fourth section of the act of May 28, 1880, it is provided:

"If it shall appear at any time that there has been a loss of distilled spirits from any cask or other package hereafter deposited in a distillery warehouse, other than the loss provided for in section 3221 of the Revised Statutes of the United States, as amended, which, in the opinion of the commissioner of the internal revenue, is excessive, he may instruct the collector of the district in which the loss has occurred to require the withdrawal from the warehouse of such distilled spirits, and to collect the tax accrued upon the original quantity of distilled spirits entered into the warehouse in such cask or package, notwithstanding that the time specified in any bond given for the withdrawal of the spirits entered into warehouse in such cask or package has not expired. If the said tax is not paid on demand, the collector shall report the amount due upon his next monthly list, and it shall be assessed and collected as other taxes are assessed and collected.    The tax on all distilled spirits hereafter en-

tered for deposit in distillery warehouses shall be due and payable before and at the time the same are withdrawn therefrom, and within three years from date of entry for deposit therein. And warehousing bonds hereafter taken. * * * shall be conditioned for the payment of the tax on the spirits as specified in the entry before removal from distillery warehouse, and within three years from the date of said bonds."

The 108 packages of whisky in the present case having been manufactured and entered for deposit in a distillery warehouse since the act of May 28, 1880, went into operation and effect, it must be assumed that the bond or bonds given by plaintiff upon making such entry or entries thereof were executed in conformity with the provisions of said section 4, and were conditioned "for the payment of the tax on the spirits as specified in the entry." It is, furthermore, perfectly clear from the language of said section that plaintiff had no absolute right to the period of three years from date of entry for the withdrawal of such spirits and payment of the tax thereon. The tax was "due and payable before and at the time" the spirits are withdrawn from the warehouse, "and within three years from date of the entry for deposit therein." The manifest meaning and purpose of said section was and is to make the tax on the original quantity of spirits entered due and payable at the time of the withdrawal thereof, when such withdrawal is required by the commissioner of internal revenue under and in pursuance of the authority therein conferred, "notwithstanding that the time specified in any bond given for the withdrawal of the spirits entered into warehouse in such cask or package has not expired." In other words, the tax based or "accrued upon original quantity of distilled spirits entered into the warehouse" is due and payable, without any allowance for diminution in quantity, whenever the commissioner of internal revenue requires its withdrawal because, in his opinion, the loss from the cask or packages is excessive, provided such loss does not come within the provisions of section 3221, Rev. St., above quoted. If the loss has arisen from "the actual destruction by accidental fire or other casualty, and without any fraud, collusion, or negligence of the owner thereof of any distilled spirits" while in any distillery or bonded warehouse, the commissioner of internal revenue has no authority, however great such loss may be, to instruct the collector of the district in which the loss has occurred to require the withdrawal of such spirits, and the payment of the tax thereon as specified in the entry thereof. But if the loss from casks or packages while in warehouse has not been caused "by accidental fire or other casualty," and in the opinion of the commissioner is excessive, the withdrawal of the spirits and payment of the tax on the quantity originally entered for deposit may be directed and required under the authority conferred upon the commissioner of internal revenue by said section 4 of the act of May 28, 1880. So that the controlling, if not the sole, question presented is whether, under the allegations of the petition, the loss in the 108 packages of whisky entered for deposit in warehouse by the plaintiff can properly be treated and regarded as an "actual destruction by accidental fire or other casualty," within the provision of

section 3221, Rev. St.    There is no controversy as to the fact that the loss from the package while in warehouse was excessive when the immediate withdrawal of the spirits was ordered and directed by the commissioner of internal revenue.    It exceeded the limit of the maximum allowance permitted by said act of May 28, 1880, when the loss was without the fault or negligence of the distiller or owner of the spirits; and the petition admitted the fact that "said losses from each and every one of said packages had been excessive when said instructions [for their withdrawal] were given," but claimed that such losses were "occasioned by the destruction of all of said spirits so lost by accidental casualties, viz., from warpage and injury to the barrels containing said spirits, caused by excessive and unusual heat in the summer of 1887, from abnormal evaporation from said packages, caused by said heat, and from undiscoverable worm-holes in the barrels containing said spirits, all without any fraud, collusion, or negligence of the plaintiff, who was the owner of said spirits."    Are the alleged causes of the admitted excessive loss, as thus stated, covered by said section 3221, Rev. St.?    We think not; for it cannot be properly said that losses resulting from either excessive and unusual summer heat or undiscoverable worm-holes in barrels constitute "actual destruction by accidental fire or other casualty," within the true meaning of said terms as employed in section 3221, Rev. St.    We are clearly of the opinion that the court below was correct in its holding that "other casualty," as used in said section, meant an accidental destruction by some cause of like character and operation as fire; such as lightning, floods, cyclones, storms, or other uncontrollable force, which ordinary foresight and prudence could not guard against or prevent.    The loss from undiscoverable worm-holes, or the warping of barrels from excessive summer heat, causing greater evaporation of spirits, is not the destruction by "other casualty" contemplated by said section 3221, Rev. St.    In *Welles* v. *Castles*, 3 Gray, 325, Chief Justice BIGELOW, speaking for the court, says that "'unavoidable casualty' signifies events or accidents which human prudence, foresight, and sagacity cannot prevent."    In *Mills* v. *Baehr*, 24 Wend. 254, there was a provision in a lease that the rent should cease if the premises became untenantable by "fire or other casualty."    The building became untenantable in consequence of the greater portion of it being taken down to conform to an order of the city corporation for the widening of the street on which it was situated.    Chief Justice NELSON, in delivering the opinion of the court, said:

"The term 'other casualty' refers to some fortuitous interruption of the use.    This is clear, not only upon the import of the words, but from the connection in which they are found.    No casualty has intervened.    On the contrary, whatever has taken place has been in pursuance of established law, and might have been and probably was anticipated."

The policy of the government, as declared in the provisions of section 3248, Rev. St., being to have its excise tax attach to distilled spirits as soon as the same are in existence, and according to the original quantity entered for deposit in warehouse, the exception to the general

rule provided for by section 3221, Id., as amended by section 6 of the act of March 1, 1879, (20 St. p. 327,) cannot, under the principle of the foregoing decisions, or by any proper construction, be extended so as to cover excessive losses arising from such causes as those alleged in plaintiff's petition.

It is urged on behalf of plaintiff in error that, inasmuch as the loss of the 635 gallons while the 108 packages were in warehouse occurred without fault on its part, an allowance should have been made therefor under section 17 of the act of May 28, 1880, which provides that, "whenever the owner of any distilled spirits shall desire to withdraw the same from the distillery warehouse or from a special bonded warehouse, he may file with the collector a notice giving a description of the package to be withdrawn, and request that the distilled spirits be regauged; and thereupon the collector shall direct the gauger to regauge the same, and mark upon each package so regauged the number of gauge or wine gallons and proof gallons therein contained. If upon such regauging it shall appear that there has been a loss of distilled spirits from any cask or package without the fault or negligence of the distiller or owner thereof, taxes shall be collected only on the quantity of distilled spirits contained in such cask or package at the time of the withdrawal thereof from the distillery warehouse or special bonded warehouse: and provided, however, that the allowance which shall be made for such loss of spirits as aforesaid shall not exceed" a certain number of proof gallons in each cask or package of 40 or more wine gallons capacity for designated periods of two or more months. The loss in question exceeded the maximum allowance covered by the proviso of said section 17. While we do not mean to decide, that it was the intention of congress by the fourth section of the act of May 28, 1880, to limit and restrict the authority of the commissioners of internal revenue, in requiring the withdrawal of spirits to cases in which the loss is greater than that allowed by the seventeenth section of said act, we are of the opinion that, even upon that construction of the two sections, as applied to the present case, the order directing the withdrawal of plaintiff's 108 packages because of excessive loss therein was clearly within the power and jurisdiction conferred upon the commissioners by and under said fourth section of the act, and that the plaintiff cannot properly claim the benefit of the allowance to the extent provided for in and by the seventeenth section. The manifest object and purpose of the fourth section of the act was to enable the commissioner of internal revenue to protect the government's lien on the spirits for the tax due thereon in cases where there was an excessive diminution of the security without fraud or negligence on the part of the owner from causes other than those excepted by section 3221, Rev. St.

Under well-settled rules of construction the courts must give such interpretation to the revenue act of May 28, 1880, as will allow both sections 4 and 17 to stand. There is in fact no conflict between them. The case made by the petition comes directly within the provisions of section 4 of said act; and the conclusion is inevitable that, the loss being

excessive, the commissioner of internal revenue had full authority to require the withdrawal of the whisky, and the payment of the tax on the original quantity entered for deposit in the distillery warehouse. In the case of *Thompson* v. *U. S.*, 12 Sup. Ct. Rep. 299, (decided January 11, 1892,) the supreme court say of section 3293, Rev. St., as amended by the fourth section of the act of May 28, 1880, already referred to, that "the evident intention of congress, to be gathered from those provisions, is that the tax shall attach as soon as the spirits are produced, and that such tax shall not be evaded except upon satisfactory proof, under section 3221, of destruction by fire or other casualty." We concur fully with the lower court in the view that the loss in the present case, as described in the petition, is not covered by section 3221, Rev. St., and that plaintiff was not entitled to any allowance as claimed on the 635 gallons lost while in warehouse, but was properly taxed thereon. We do not deem it necessary to consider or decide the question whether, under the principle laid down in the cases of *Erskine* v. *Hohnbach*, 14 Wall. 613; *Haffin* v. *Mason*, 15 Wall. 674; and *Harding* v. *Woodcock*, 137 U. S. 46, 11 Sup. Ct. Rep. 6,—the plaintiff could maintain its said suit against the defendant under the facts alleged. The judgment of the circuit court is affirmed, with costs.