·John Alan APPLEMAN and Jean G. Appleman, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

No. 14592.

United States Court of Appeals Seventh Circuit.

Nov. 19, 1964.

Louis F. Oberdorfer, Asst. Atty. Gen., J. Edward Shillingburg, U. S. Dept. of Justice, Washington, D. C., Carl W. Feickert, U. S. Atty., E. St. Louis, Ill., Lee A. Jackson, David O. Walter, Attys., Dept. of Justice, Washington, D. C., for appellant.

John Alan Appleman, Urbana, Ill., Jean Appleman, Chicago, Ill., for appellees.

Before CASTLE, KILEY and SWYGERT, Circuit Judges.

CASTLE, Circuit Judge.

The government prosecutes this appeal from a judgment for $1,642.68, with interest, entered against it by the District Court in an action brought by John

Alan Appleman and Jean G. Appleman[1] to recover alleged overpayments of federal income taxes for the taxable years 1956, 1957, and 1958. The taxpayers had taken deductions on their income tax returns for those years for depreciation in value of their property as a result of the loss of elm trees occasioned by phloem necrosis.[2] The deductions were disallowed, the taxpayers paid the additional tax resulting from the disallowance, and their claims for refund thereof were rejected. Their action for recovery of the amounts of the additional tax paid was tried by a jury, which returned a verdict favorable to the taxpayers. The District Court denied the government's motion for judgment notwithstanding the verdict and entered judgment in accordance with the verdict. The government's appeal is predicated upon the contention that the court erred in denying its motion.

Our review of the denial of such a motion is limited to a determination of whether the evidence warranted submission of the case to the jury. Such motion raises a question of law as to whether the evidence, together with all reasonable inferences which may be drawn therefrom, when viewed in the light most favorable to the party against whom the motion is directed, is insufficient to support the verdict. Lambie v. Tibbits, 7 Cir., 267 F.2d 902, 903; Lescher Building Service, Inc. v. Local Union No. 133, etc., 7 Cir., 310 F.2d 331, 333. If there is any evidence which, if believed by the jury, warranted the verdict the judgment in favor of the taxpayers must stand. But if the taxpayers failed to present proof which would warrant a favorable finding as to an element requisite to the establishment of their cause of action it was error to deny the government's motion. Cf. Gordon v. Illinois Bell Telephone Company, 7 Cir., 330 F.2d 103, 106.

It is not disputed by the government that the evidence warranted findings by the jury that the taxpayers sustained a depreciation in the value of their property due to the death of elm trees located thereon, in the amount as fixed by the verdict for each of the years involved. And the government does not dispute that the evidence supports the conclusion that the death of the trees, and the resulting loss, was due to phloem necrosis. The basic contested issue precipitated by the government's appeal is whether the loss so sustained by the taxpayers is a "casualty" within the purview of Section 165(c) (3) of the Internal Revenue Code of 1954 (26 U.S.C.A. § 165(c) (3)) which authorizes a tax deduction by an individual for an uncompensated loss of property not connected with a trade or business, and sustained during the taxable year, if such loss:

"   *   *   *   arise[s] from fire, storm, shipwreck, or other casualty, or from theft.   *   *   * "

In the absence of any congressional explanation of the phrase "or other casualty" as used in the above section, the courts have turned to the traditional rule of *ejusdem generis* as an intrinsic guide to the construction and application of the term. Rosenberg v. Commissioner, 8 Cir., 198 F.2d 46, 50, 41 A.L.R.2d 684; United States v. Rogers, 9 Cir., 122 F.2d 485. "Other casualty" is an omnibus phrase. And as used in Section 165(c) (3) it follows an enumeration of specific categories of casualty. Absent some indication of congressional intent to the contrary the phrase must be taken as restricted to things of the same kind or quality as those specifically enumerated. United States v. Stever, 222 U.S. 167, 174, 32 S.Ct. 51, 56 L.Ed. 145. Among characteristics of the specific casualties enumerated in the section are suddenness and unforeseeability of the occurrence. Fire and shipwreck are

1. Hereinafter referred to as taxpayers.

2. "Phloem" is a complex tissue in the vascular system of higher plants consisting mainly of sieve tubes and companion cells and usually also of fibre and parenchyma cells. It is part of the conductive tissue conveying the materials nourishing the plant. "Necrosis" is the death of living tissue; the death of plant tissue caused by fungi or other factors.

undesigned, sudden and unexpected events. While storms are to a degree predictable the factors of their violence and the particular site of loss or damage are uncertain.

We have reviewed and considered the decisions cited by the taxpayer and those cited by the government in which the "other casualty" provision of the section has been involved. For the most part they represent determinations made with reference to one or more of the factors above mentioned.[3] And the elements or factors, or absence thereof, which have been deemed controlling and determinative of the result reached, and the relative weight accorded them as tests of a "casualty" loss under the statute, have necessarily varied according to the inherent differences in the nature of the event or occurrence relied upon as constituting a casualty and the character of the subject matter or property upon which it operated.

The record in the instant case discloses that in 1949 or 1950 the taxpayers, husband and wife, acquired a twenty-five acre tract of land approximately four miles north and east of Urbana, Champaign County, Illinois. It had a number of elm trees growing thereon and the taxpayers planted more. Phloem necrosis first appeared in Champaign County, Illinois, in the early 1950's. It is a virus which enters the cells of the phloem of a tree, the woody connective tissue of the tree just beneath the bark. The virus is carried by an insect called a leaf hopper which after feeding on an infected tree, sucking up the sap, moves on to a healthy tree into which it injects the virus while feeding thereon. During 1956 the taxpayers lost forty-two trees to the disease; in 1957, ten trees; and in 1958, thirty-nine more.

There is testimony in the record from which the jury could have concluded that the bite of but one leaf hopper carrying the virus is sufficient to infect an elm tree; that the infected tree inevitably dies from the disease, usually in about a month; that there was nothing which a property owner could do to save the elm tree once it was infected. Spraying proved ineffective in preventing the disease, except under laboratory conditions. The University of Illinois (located at Champaign-Urbana), the municipalities of Urbana and Champaign, and private property owners, conducted spraying programs but lost their elm trees. Prior to 1956 the taxpayers had been spraying but discontinued when informed it would do no good.

But the record also discloses that the taxpayers' expert witnesses testified that from the early 1950's the serious nature of the disease was obvious to any person living in the area; that during the years 1956, 1957 and 1958 the infection of elm trees was an ordinary and usual event— a common experience—in Champaign County, the situs of the property involved and where the taxpayers resided. One of the taxpayers testified that it was common knowledge a disease was attacking the elm trees throughout Champaign County in the 1950's and that the disease had been the subject of a town meeting discussion before the taxpayers took up residence upon the tract involved.

Taxpayers' contention that if a definite economic loss occurs to the individual as a result of forces beyond his control, and not due to his fault, a casualty such as contemplated by Congress has occurred overlooks the factor of "unexpectedness"—a prerequisite element implied in the statute—which arises from the limitation upon the scope of the phrase "other casualty" by reason of its

---

3. The most analogous of the cases appears to be Burns v. United States, (N.D. Ohio, E.D.) 174 F.Supp. 203, affirmed per curiam, (8 Cir.) 284 F.2d 436, where it was held that the loss of elm trees in consequence of the Dutch Elm Disease was not a casualty within the meaning of the comparable provision of the Internal Revenue Code of 1939. In that case it is indicated that the progressive nature of the disease disqualified the resulting loss on the ground of lack of suddenness but the district court went on to declare: "loss occasioned by disease, however contracted, is not a casualty within the meaning of the statute."

association with fire, storm and shipwreck losses. The record demonstrates that during the years involved loss of elm trees from phloem necrosis was to be expected. It was a common occurrence. Between fifteen and seventeen thousand elms were lost in the area—over ninety-eight percent of the elms in the community. The disease existed in the area and the evidence is that no practical means existed to effectively protect a tree from infection. Thus, apart from the question whether death within a month from infection is relatively "sudden" it is apparent the element of unexpectedness was entirely lacking, and as a matter of law the death of the taxpayers' elms during 1956, 1957 and 1958 was not a casualty within the meaning of Section 165(c) (3). The District Court erred in denying the government's motion for judgment notwithstanding the verdict. The judgment order of the District Court is therefore reversed.

Reversed.