Charles Hayward and Dorothy Hayward v. Commissioner.
Hayward v. Commissioner
Docket No. 5190-64.
United States Tax Court
T.C. Memo 1968-114; 1968 Tax Ct. Memo LEXIS 184; 27 T.C.M. (CCH) 547; T.C.M. (RIA) 68114; June 13, 1968. Filed *184 Petitioners resided in a St. Louis, Missouri suburb some 160 miles removed from the Hayward family home in Shelbina, Missouri, which was vacant for some three years prior to 1961. The house was in a generallu run-down and dilapidated condition as the result of poor maintenance and general deterioration over a period of years. Petitioners deducted $7,466.07 and $3,509.95 in 1961 and 1962, respectively, claiming these amounts as deductions for casualty damage allegedly sustained by the house as a result of storms and vandalism. Held: Petitioners have failed to prove that they are entitled to the deductions claimed. They have not proved that a casualty loss occurred or what their interest in the property was when it was allegedly damaged. The evidence is also insufficient to establish the amount of any such loss sustained. Respondent's disallowance of all deductions claimed as casualty losses is upheld. Petitioners have not sustained their burden of proof. Charles Hayward, pro se, 7020 Clayton Rd., St. Louis, Mo. Michael J. Christianson, for the respondent. HOYT
Memorandum Findings of Fact and Opinion HOYT, Judge: The only issue remaining for decision is whether petitioners may deduct *185 any amount as a casualty loss in the taxable years 1961 or 1962 under section 165 (c) (3), I.R.C. 1954. [1] The alleged losses are claimed to have been inflicted upon the old Hayward family home at Shelbina, Missouri, by windstorm and vandals in 1961 and the repairs thereto were paid for partly in that year and partly in 1962. Certain issues unrelated to the casualty loss question were conceded or settled by the parties before, during, and after trial or have not been properly presented as will hereinafter be discussed. Their settlement in no way affects our disposition of the unrelated casualty loss issue. Findings of Fact Some of the facts have been stipulated and are incorporated herein as part of our findings. Petitioners Charles Hayward and Dorothy Hayward are husband and wife. During the taxable years 1961 and 1962, they resided in Creve Coeur, Missouri. They filed their joint Federal income tax returns for these years with the district director of internal revenue in St. Louis, Missouri. All references hereinafter made to "petitioner" in the singular shall be to petitioner Charles Hayward. *186 Petitioner's father, Charles Hayward, Sr., purchased residential property in 1917 located at 210 West Walnut, Shelbina, Missouri. This property will hereinafter sometimes be referred to as "the house." The father died intestate in 1936. At the time of his death he was the sole owner of the house. He was survived by his widow, Hattie, and two sons, John and Charles, Jr., the petitioner. The widow, Charles' mother, was the last occupant of the Shelbina house before its vacancy, which commenced in approximately 1958. For some years before Hattie moved out of the house in 1958, she spent her days at the house, and at night she stayed in a Shelbina hotel. After she moved out of the house altogether, she went to live with petitioner and his wife in Creve Coeur, a St. Louis suburb. Petitioner's residence at the time of the house's abandonment was some 160 miles removed from Shelbina. After Hattie moved away from the house, it remained unoccupied and the weeds and trees on the premises were allowed to grow unattended. During approximately three years of subsequent vacancy, the lawn was cut only one time by a man who used a scythe to cut a few weeds around the back door. Petitioner was informed *187 shortly before August 17, 1961, that the Shelbina house was to be sold at a tax auction. Upon being apprised of the auction, Charles traveled to Shelbina on or about August 16, 1961, in order to attend to affairs relating to the house. At this time, it was apparent to petitioner that the house was in a shocking state of disrepair. He and Dorothy then decided to undertake a comprehensive remodeling or renovation of the house. Their apparent purpose was to convert what had been a run-down but spacious single-family home into two up-to-date apartments suitable for renting. Dorothy spent the majority of her time during the months of September and October 1961 in Shelbina to supervise the cleaning of the premises and the remodeling of the house. During the three years prior to August of 1961 when the house was unoccupied, petitioner and Dorothy had made only infrequent trips to Shelbina to take away certain items of personal property which were, in effect, being stored in the unoccupied family home. By warranty deeds dated and acknowledged on September 1, 1961, petitioner's mother, Hattie, and his brother, John, and his wife, conveyed the Shelbina property to petitioner and his wife. These *188 deeds were subsequently recorded on November 28, 1961. When they were delivered to petitioners does not appear of record. What interests Hattie or John and his wife had respectively in the property does not appear either. The grantor in each deed purported to convey and warrant title to the entire property. In August of 1961, the house was in a generally run-down dilapidated condition and in a poor state of repair. Without 549 detailing all the facts which compel this finding, several particulars are noteworthy. The grounds and lawn of the property were jungle-like in appearance. Vines and weeds reached seven or eight feet in height. Some of the vines were over 50 feet in length. At certain angles of view, it was impossible to look across the lawn of the property and see buildings situated on immediately adjacent residential plots. A mulberry tree had been allowed to grow up and damage both the roof and foundations of the house at its northwest corner. The paint on the exterior of the house was chipped, peeling, dirty, and very dull in hue; the sidings of the frame dwelling were in need of scraping and renailing. Of two porches, one was almost completely deteriorated and the other *189 was in need of repair. The roof on the house had been put on in 1939. The type of roofing which was installed (composition shingle) generally has a useful life of approximately 15 years. A next door neighbor uses the same type of roofing. His roof was installed in 1946 and was replaced in 1965. Petitioner, as part of the renovation of the house, bought new shingles and replaced the roofing on the old home. The thoroughgoing renovation of the house, when completed, effected a substantial transformation. The work which was done to the house during the fall of 1961 and early 1962 was undertaken to modernize obsolete wiring, plumbing, equipment, fixtures, and the like, and to repair damage, defects, or deterioration which simply resulted from the passage of time, neglect and poor maintenance. The house which had not been painted since 1944 was repainted and the sidings repaired. The foundation was repaired where the mulberry tree had caused damage over the years. Window frames and sash guards on the windows were repaired. Window shades were removed and replaced with venetian blinds. Dormer vents, integral to the house prior to the commencement of work, were removed in 1961 and left off *190 permanently. The house, including the attic, was insulated in 1961. This necessitated a thorough cleaning of the attic. In fact, a thorough cleaning of the yard and the entire interior of the house was necessary before work of any description could commence. Plumbing and electrical wiring were completely replaced, and a new concrete floor was installed in the basement, which prior to 1961 had been of dirt. New steps and a door leading to the basement were also installed. One closet was enlarged and a completely new closet was added. Two new gas furnaces were installed to replace an old coal-fired furnace. In addition to the new plumbing, new fixtures, including tubs and lavatories, were placed in the bathrooms and the walls thereof were tiled. Two combination sink-cabinets were added in the two kitchens in 1961. Other wooden cabinets in one kitchen were refinished. The floors of both kitchens were tiled and wallpaper was placed on the walls of one kitchen. Further, all the floors in the house were refinished and the house was generally redecorated. The floors of the house were raised to prevent any further sagging, and plaster which was cracked in the process had to be replaced; considerable *191 other plastering was also required in the course of the general remodeling. When all the changes were completed, the house contained two apartment units with separate entrances for each. Totally, the work described above cost more than $10,000. The appearance of the house was greatly improved and it was effectively converted to attractive duplex rental property. Prior to August 1961, the house resembled a deserted, derelict, haunted house; after the work was completed, the house was converted to an attractive property. The change in appearance was dramatic and noticeable. From 1944 up to the time of remodeling in 1961 there was no definite, noticeable or sudden change in the house's appearance. In 1959 or 1960, the house bore the same generally dilapidated, dismal appearance which it had in 1961, just prior to the remodeling. There were broken windows in the house in the year 1960 as well as in the year 1961. It was run-down and showed its age and neglected condition. The house of the next door neighbor incurred no storm damage in 1960 or 1961. No storm damage to the house or any other neighboring property was evident in 1960 or 1961. Petitioner Dorothy Hayward, who supervised the *192 work on the house, did not personally see any storm in Shelbina, Missouri, in 1961. No one saw any evidence of vandalism around or about the Haywards' Shelbina house nor did anyone witness acts of vandals. A contractor who performed major work in the remodeling process was unaware of damage caused by vandals; he could not recall any vandalism 550 to homes in Shelbina during the summer of 1961. The records of storm data and unusual weather phenomena compiled by the Department of Commerce indicate no storms or unusual weather occurrences in Shelbina during the year 1961. Ultimate Findings of Fact The run-down, dilapidated and shabby condition of the house in August of 1961 was the result of ordinary deterioration combined with neglect and poor maintenance, over a number of years. The condition of the house was not in whole or in part the result of vandalism or windstorm damage; no casualty loss has been proved. Opinion On their joint Federal income tax returns for the years 1961 and 1962, petitioner and Dorothy claimed casualty loss deductions in the amount of $7,466.07 and $3,509.95, respectively. The claimed losses were stated to be the result of windstorm and vandalism damages. Returns *193 for both years indicate that the amount of loss claimed was the sum of all moneys paid in the respective year for restoration or improvement of the Shelbina house. As indicated, the only issue presented for decision is whether petitioner sustained a deductible casualty loss with respect to the Shelbina residence. Petitioner maintains on brief that seven issues are before us, including, inter alia, whether the statutory notice of deficiency was in proper form. Only two of the seven, argued but rather frivolous issues mentioned by petitioner on brief, were raised in the pleadings. The only issues properly before this Court are those established by the pleadings. J. William Frentz, 44 T.C. 485, 490-91 (1965), affd. 375 F. 2d 662 (C.A. 6, 1967); Lynne Gregg [Dec. 18,962], 18 T.C. 291, 303 (1952), affd. 203 F. 2d 954 (C.A. 3, 1953). The notice of deficiency appears to be valid on its face. Petitioner did not even attempt at trial to prove any defects in the statutory notice. The presumptive validity of the notice stands unimpeached and the burden of proof rests on petitioners to overcome its presumed correctness. The two issues raised by the pleadings and pressed at trial and on brief *194 were (1) whether petitioner sustained a deductible casualty loss (mentioned above as being the only issue remaining for decision), and (2) whether petitioner's privacy was invaded by respondent. We do not find it necessary to explore the legal or constitutional relevance of the invasion of privacy allegation because petitioner presented no evidence of any description relating to such activity on respondent's part. Accordingly, we conclude, as indicated at the outset, that the only bona fide remaining issue is whether a casualty loss was sustained. Initially, respondent disallowed the total amounts deducted by petitioner as casualty losses in both 1961 and 1962. Subsequently, he has allowed $312.23 of the 1961 deduction as a travel expense, and the amounts of $505.66 and $156.87 of the 1962 deduction as interest and rental expenses, respectively. Beyond these allowances, which are not based on a casualty loss theory, petitioner has not shown himself to be entitled to any deduction whatever. The short answer to petitioner's casualty loss claim is that he has not proved the event of the casualty as that term is defined by the applicable statutory provision, sec. 165 (c) (3), I.R.C. 1954. *195 [2] The courts have consistently demanded a sudden, unexpected identifiable event which causes or fixes the loss. See Appleman v. United States, 338 F. 2d 729 (C.A. 7, 1964). Petitioner does not argue that the extreme physical deterioration of the property over the years qualifies as the casualty event. Rather, he urges that the totality of his expenditures during 1961 and 1962 was necessitated by either windstorm or vandalism damage which occurred prior to August of 1961 and in that same year. [3] *196 551 This factual allegation is unsupported by the record. We think petitioner has not rebutted the presumptive correctness of respondent's determination. His evidence consisted in the main of self-serving, vague and general, unconvincing statements made by his wife or himself. If petitioners sustained any casualty loss because of damage they have failed to establish either the event or the amount of such loss. Respondent, not content to rest on the strength of his determination standing alone, presented positive evidence (by a neighbor, a contractor who worked on the house, and official Weather Bureau records) all of which tended to indicate that no casualty damage by storm or vandalism occurred to the house in 1961. *197 We are particularly impressed with the testimony of the next door neighbor, who surely would have been aware of a major storm or of vandalism on a scale which would be necessary to support petitioner's hypothesis. We believe the preponderance of the credible evidence supports respondent, even without regard to the presumptive correctness of respondent's determination, which clearly has not been rebutted by petitioner's self-serving, vague and general testimony. As reflected by our Ultimate Findings of Fact, we conclude that the house was in a generally run-down condition prior to August of 1961. The expenditures made in 1961 and 1962 were to correct this situation and to convert the old home into an up-to-date and attractive duplex rental property. They were not incurred to restore casualty damage. As a factual proposition we are convinced that no casualty occurred which seriously damaged the house; certainly even if such in fact did happen, which the evidence does not establish with any degree of certainty or exactness, the renovation and rebuilding of the house bore no relation to any minor damage that might have been sustained. At the very most, the record would support the conclusion *198 that some time in 1961 between April and August some minor damage from the elements or from vandalism occurred. However, petitioners have failed utterly to establish the casualty event or quantum of any damages that may have resulted therefrom. Because of our conclusion just stated, it is unnecessary to discuss in any great detail the following hurdles which would probably also bar the deductions sought by petitioner, in whole or in part: (1) Petitioner has not proved his basis in the property; (2) petitioner has not shown to what extent he was the owner of an interest in the house when the loss allegedly occurred; and (3) petitioner has not even urged upon us that a casualty occurred in 1962, during which year he deducted more than $3,000 as a casualty loss. His basic "story" is that the alleged casualty occurred in the period between April and August of 1961, and the general rule is that the loss must be taken in the year of occurrence. Harry Brown, 23 T.C. 156 (1954). As our findings reflect he was apparently only a part owner of the property, at most, when he claims the loss occurred; it was not until September 1, 1961, at the earliest, that Hattie and brother John deeded their *199 interests in the home place to him. The record does not establish his interest, if any, in the property when the alleged casualties occurred. Respondent argues these three defects in petitioner's case very strenuously. We see no need to consider them further, however, in light of our conclusion that petitioners have failed to meet their burden of proving that a casualty occurred with respect to the Shelbina house in any year before this Court. We must sustain respondent's determination denying the claimed deductions. Due to the concessions and settlements made by the parties and to reflect any necessary adjustments required by this Opinion, Decision will be entered under Rule 50. Footnotes
1. All statutory references shall be to the Internal Revenue Code of 1954, unless otherwise noted.↩
2. Petitioner in this case would have us allow the deduction under sec. 165(c) (3), which provides as follows: SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * * (c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - * * * (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. * * * ↩
3. We assume without deciding that the vandalism alleged by petitioner might qualify as "other casualty" under sec. 165(c) (3). See Burrell E. Davis, 34 T.C. 586 (1960). In passing we note that petitioners have also failed to establish that the alleged losses, if any, were "not compensated for by insurance or otherwise.", as specified in sec. 165(a)↩. There is only petitioner's general testimony of record that he checked his file and found no insurance policy; whether or not the other owners carried insurance has not been established, nor has it been shown that no insurance proceeds were collected.