T.C. Memo. 2019-90

UNITED STATES TAX COURT

JOHN E. ROGERS AND FRANCES L. ROGERS, ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 29356-14, 15112-16,         Filed July 17, 2019.
            2564-18.

John E. Rogers, for petitioners.

Maya Solh-Cade, Mayer Y. Silber, Jay D. Adams, and Briseyda

Villalpando, for respondent.

---

[1]Cases of the following petitioners are consolidated herewith:  John E.
Rogers and Frances L. Rogers, docket No. 15112-16, and Frances L. Rogers,
docket No. 2564-18.

[*2] MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, Judge: Respondent issued notices of deficiency to petitioners determining income tax deficiencies for 2010 and 2012 of $940,747 and $243,913, respectively, and accuracy-related penalties under section 6662(a) for 2010 and 2012 of $188,149 and $48,783, respectively.[2] Petitioner Frances L. Rogers seeks relief from joint and several liability under section 6015 for 2010, 2011, and 2012. The Court severed the section 6015 issue in order for Mrs. Rogers to obtain new counsel. Therefore, we do not address the issues under section 6015 in this opinion.[3]

Petitioners are no strangers to this Court. They litigated their income tax liability for 2003 in Rogers v. Commissioner, T.C. Memo. 2011-277, aff'd, 728 F.3d 673 (7th Cir. 2013). The Court determined that petitioners had unreported

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) as amended and in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. All amounts are rounded to the nearest dollar.

[3]In the case at docket No. 2564-18 Mrs. Rogers requests relief from joint and several liability under sec. 6015 for tax year 2011. That case was consolidated with the other two. Petitioners received a timely notice of deficiency for their 2011 tax liability but failed to timely petition this Court with respect to the deficiency determined for that year. As the only issue for 2011 is relief from joint and several liability under sec. 6015, we do not address that year in this opinion.

[*3] income from petitioner John Rogers' business activities and disallowed certain business expense deductions related to both petitioners' business activities. Petitioners were also assessed income tax and a penalty for 2003 as a result of our decision in Superior Trading, LLC v. Commissioner, 137 T.C. 70 (2011), supplemented by T.C. Memo. 2012-110, aff'd, 728 F.3d 676 (7th Cir. 2013).

Petitioners litigated their 2004 tax liability in Rogers v. Commissioner, T.C. Memo. 2014-141, and their 2005, 2006, 2007, and 2009 tax liabilities in Rogers v. Commissioner (Rogers 2005-09), T.C. Memo. 2018-53. In both cases we determined that petitioners had unreported income and disallowed business expense deductions related to their business entities.[4] Petitioners were also assessed income tax for 2005 as a result of our decision in Kenna Trading, LLC v. Commissioner, 143 T.C. 322 (2014), aff'd sub nom. Sugarloaf Fund, LLC v. Commissioner, 911 F.3d 854 (7th Cir. 2018), and for 2006, 2007, and 2008 as a result of our decision in Sugarloaf Fund, LLC v. Commissioner, T.C. Memo. 2018-181.

After concessions, the issues remaining for consideration are: (1) whether petitioners are entitled to the following deductions: a casualty loss deduction for

---

[4]Petitioners were subsequently subject to penalties related to their 2005, 2006, 2007, and 2009 liabilities as a result of Rogers v. Commissioner, T.C. Memo. 2019-61.

[*4] 2010, certain business expense deductions for 2010 and 2012, a worthless debt or stock deduction relating to Portfolio Technologies, Inc. (PTI), for 2010, and a net operating loss carryforward deduction for 2010 or 2012; we hold that they are not except to the extent stated herein; (2) whether Sterling Ridge, Inc. (SRI), an S corporation wholly owned by Mrs. Rogers, was entitled to include certain costs in costs of goods sold (COGS) and deduct certain business expenses for 2010 and 2012; we hold that it was not except to the extent stated herein; (3) whether Portfolio Properties, Inc. (PPI), an S corporation wholly owned by Mr. Rogers, was entitled to include certain costs in COGS and deduct certain business expenses for 2010; we hold that it was not except to the extent stated herein; and (4) whether petitioners are liable for accuracy-related penalties under section 6662(a) for 2010 and 2012; we hold that they are.

## FINDINGS OF FACT

Petitioners resided in Illinois when the petitions were timely filed with this Court. The stipulations of facts and the accompanying exhibits are incorporated herein by this reference. In addition, the parties have settled a number of issues originally in dispute in these cases.

Petitioners were married during the years at issue and remained married at the time of trial. They filed a joint tax return prepared by Mr. Rogers for each of

**[*5]** the years at issue. Mr. Rogers is a tax attorney licensed in the State of Illinois with decades of experience. He earned a juris doctor degree (J.D.) from Harvard University and a master of business administration degree (M.B.A.) in international finance from the University of Chicago. In 1992 Mr. Rogers joined FMC Corp., a multinational conglomerate with operations in over 100 countries, and served as its tax director and assistant treasurer through 1997. In 1998 he joined the law firm Altheimer & Gray where he worked as a partner until 2003. From July 2003 to May 2008 he worked as a corporate and tax attorney, and partner, at the law firm Seyfarth Shaw, LLP (Seyfarth), in downtown Chicago, Illinois. In 2008 Mr. Rogers left Seyfarth to open his own law firm, Rogers & Associates. He is also a licensed certified public accountant in the State of Illinois.

Mrs. Rogers has a bachelor of science degree in chemistry from the College of St. Francis and a master of science degree in biochemistry from Purdue University. She also holds an M.B.A. and a doctorate in educational administration from Northern Illinois University, and a J.D. from Villanova University School of Law. Mrs. Rogers has been a licensed attorney in the State of Illinois since 1991 and has held a real estate broker's license since 1967. She

[*6] worked as a high school teacher and associate principal from 1973 until retiring from the education field in 2005.

I.    Deductions

     A.    Casualty Loss

Petitioners claimed no casualty loss deduction on their 2010 joint Form 1040, U.S. Individual Income Tax Return. However, before trial in these cases petitioners asserted that they had suffered a casualty in 2010 related to a broken sewer line and sought a deduction for a resulting casualty loss. The break occurred on the sewer line of petitioners' neighbor, and the record does not reflect what caused the break.

Petitioners hired F.J. Kerrigan Plumbing (Kerrigan) to handle repairs as a result of the sewer line break. Kerrigan provided petitioners with a proposal to install a new sewer line, which explained that the new sewer "will run from village right of way to just outside the north face of the house." Under the proposal Kerrigan would also replace a broken floor drain in the basement of petitioners' home.

To facilitate the project petitioners paid a $3,000 deposit to the Village of Kenilworth (Village) for any damage that might be done to Village property. In addition, petitioners paid the Village an escrow of $2,247 guaranteeing the work

[*7] would be completed under the time prescribed in the permit granted by the Village. Both amounts were fully refunded to petitioners upon completion of the sewer line repair work. Petitioners paid $18,984 to Kerrigan for its work, including a $3,000 deposit on April 7, 2010, and a final payment for the balance on September 1, 2010.

The record reflects that petitioners repaired their neighbors' sewer line and items that were on city property. On July 21, 2010, Mrs. Rogers addressed a letter to Kerrigan explaining her displeasure with the work performed and noting that "the break occurred on across-the-street neighbor's sewer line, not mine. It was not my responsibility to bear the full cost of the giant hole in the parkway to repair the neighbor's sewer."

B. Rogers & Associates Business Expense Deductions

In 2010 and 2012 Mr. Rogers operated the law firm Rogers & Associates, which was primarily a tax law practice. For both years petitioners filed a Schedule C, Profit or Loss From Business, for Rogers & Associates to accompany their joint Form 1040. Petitioners claimed several deductions relating to Rogers & Associates business activities which respondent disallowed in his notices of deficiency.

**[*8]**       1.   <u>Legal Expenses</u>

Petitioners claimed a deduction for legal and professional fees of $681,414 for 2010 on Rogers & Associates' Schedule C.  Respondent disallowed this deduction entirely in his notice of deficiency.  The parties have stipulated that petitioners are entitled to deduct $7,523; the remaining amount, $673,891, is still in dispute.  Petitioners submitted canceled checks and invoices to substantiate this amount.  The notation "JER" on these invoices refers to John Edwards Rogers, a petitioner in two of these cases.  The notation "SLF" or "SF" refers to Sugarloaf Fund, LLC (Sugarloaf).  Sugarloaf is a TEFRA partnership that has been the subject of litigation before this Court.  <u>See</u> <u>Sugarloaf Fund, LLC v. Commissioner</u>, T.C. Memo. 2018-181.

A substantial amount of petitioners' 2010 legal fees was paid to the law firm Kozacky & Weitzel (K&W), which represented petitioners in several professional and personal legal matters.  K&W represented Mr. Rogers in arbitration with the Attorneys' Liability Assurance Society (ALAS) and in a suit against Seyfarth to recover a portion of his capital account.  JAMS Arbitration (JAMS) handled the arbitration between ALAS and Mr. Rogers.  K&W also represented Sugarloaf in litigation to recover an $800,000 loan Sugarloaf made to Marvin Redenius in 2008.  Some of the K&W "Redenius" invoices were paid in 2010.

[*9]   Mr. Rogers and his former firm Seyfarth were involved in malpractice litigation brought by Brian Mills (Mills litigation).  Seyfarth paid 75% of the legal fees in the Mills litigation, and Mr. Rogers paid the remaining 25%.  K&W represented Mr. Rogers in the Mills litigation.[5]  Some of these invoices were paid in 2010.  In addition, the law firm Craig & Macauley (C&M) represented Mr. Rogers in the Mills litigation.  Nutter McClennan served as a discovery master in the Mills litigation.

In 2010 Rogers & Associates also incurred nonlegal professional fees for accounting services to prepare client tax returns, gather data for various legal matters, and assist with petitioners' personal returns.

### 2.   Meals, Entertainment, and Travel

For 2010 petitioners claimed deductions for meals and entertainment of $778 and for travel of $16,327 on Rogers & Associates' Schedule C.  Respondent disallowed these deductions in their entirety in his notice of deficiency. Petitioners provided receipts to attempt to substantiate the claimed deduction for meals and entertainment.  Mr. Rogers lost his diary of travel activities for 2010 but created a log after the fact to document some of his travel.  Petitioners provided

---

[5]Mr. Rogers also explained that his dispute with ALAS was to make it perform on a malpractice contract in connection with the Mills litigation, but he offered no further context for the dispute.

**[*10]** this log, documents, and QuickBooks reports to substantiate the claimed travel expense deduction.

### 3. Other Deductions

For 2010 petitioners claimed returns and allowances of $200,000 on their Schedule C for Rogers & Associates, for uncollectible client account receivables. Respondent disallowed the entire amount.

For 2012 petitioners claimed a deduction of $20,473 for "insurance other than health" on Schedule C for Rogers & Associates. Respondent disallowed $8,759 of this deduction. Mr. Rogers paid Paul Revere Life Insurance Co. $2,473 for disability insurance in 2011. Petitioners received a bill from Paul Revere Life Insurance Co. for $2,473 due August 1, 2012, and have QuickBooks records indicating this amount was paid in 2012.

### C. Rogers 2005-09 Litigation

Petitioners raise issues that stem from our opinion in Rogers 2005-09. The parties in these cases are the same involved in the Rogers 2005-09 litigation. In that case petitioners sought worthless debt or worthless stock deductions with respect to their activities with Reddy Lab and PTI.[6] Specifically, petitioners

---

[6]Reddy Lab was a holding company structure created by Mr. Rogers in 1991 to hold the patent on a medical device and manufacture and distribute the device

(continued...)

[*11] argued for: (1) a $1.3 million worthless debt deduction for amounts owed by Reddy Lab; (2) an $808,000 worthless debt deduction for amounts owed by PTI; (3) a worthless stock deduction for Mr. Rogers' PTI stock; and (4) an approximately $2 million worthless debt deduction for Lucas & Rogers'--a real estate brokerage company wholly owned by Mr. Rogers--claims against Reddy Lab or a worthless stock deduction for its PTI stock.

In Rogers 2005-09, at *55-*61, we found each of petitioners' claims to be without merit. Specifically, as it relates to petitioners' claim for a $1.3 million worthless debt deduction for amounts owed by Reddy Lab, we found that petitioners failed to establish a debt in excess of amounts previously deducted. Id. at *57. In addition, we did not allow an $808,000 worthless debt deduction for amounts owed by PTI because we found petitioners failed to establish that a valid debtor-creditor relationship had existed between PTI and Mr. Rogers. Id. at *59. We also found that the issues relating to a worthless stock deduction for Mr. Rogers' PTI stock was not properly before the Court. Id. at *55-*56. Similarly, we found the issues relating to deductions for PTI stock owned by Lucas & Rogers

---

[6](...continued)
as part of Mr. Rogers' work as the president and chief operating officer for a medical device company. PTI was organized by Mr. Rogers as its president and purchased the patent rights to the medical device from Reddy Lab in 1995.

**[*12]** were not properly before the Court. Id. Finally, we did not allow a $2 million worthless debt deduction for Lucas & Rogers' claims against PTI because Lucas & Rogers assigned its $2 million claim to PTI in 1998. Id. at *55.

In Rogers 2005-09, petitioners also asserted that they had a net operating loss carryforward from 2008 available for their 2009 tax year. That issue is computational, and the amounts will be determined in decision documents entered in accordance with our opinion in Rogers 2005-09. Following entry of decisions in those cases, respondent will compute whether petitioners have any remaining net operating loss to carry forward to the years at issue in these cases--i.e., 2010 and 2012.

## II. SRI's Deductions and COGS

During 2010 and 2012 Mrs. Rogers wholly owned SRI, which was engaged in the development of a residential real estate subdivision (Sterling Ridge subdivision). Mr. Rogers was president of SRI and prepared its S corporation returns for 2010 and 2012. Petitioners reported Mrs. Rogers' share (100%) of SRI's income or loss on their 2010 and 2012 Schedules E, Supplemental Income and Loss. In his notices of deficiency respondent disallowed COGS and certain deductions SRI claimed for 2010 and 2012. As a result of these disallowances respondent increased petitioners' income from SRI for 2010 and 2012.

[*13] On January 1, 2010, SRI owned 24 lots. During the 2010 tax year SRI sold three lots--lots 41, 61, and 77. Lots 41 and 77 had homes erected on them; lot 61 remained vacant. Lot 41 sold for $610,000, lot 61 for $127,500, and lot 77 for $520,000. On January 1, 2011, SRI held 21 lots. During the 2011 tax year SRI sold four vacant lots for $150,000 each. On January 1, 2012, SRI owned 17 lots. During 2012 SRI sold three vacant lots for $150,000 each and otherwise disposed of another three lots. On December 31, 2012, SRI held 11 lots in the Sterling Ridge subdivision.

SRI was an accrual method taxpayer for 2010 and 2012. For 2010 SRI reported COGS of $775,173. In calculating this number SRI reported other costs of $388,015, itemized as follows: $209,901 for property taxes, $55,000 for commissions, $32,997 for maintenance, $25,000 for PPI payroll, $15,075 for legal fees, $4,475 for tile work, $4,400 for deck work, $895 for liability insurance, $820 for fireplace work, $904 in unspecified repairs, $210 in electric work, and an additional $38,338 in unspecified miscellaneous and other expenses.

Petitioners' other costs of $388,015 were expenses incurred for the construction of homes on lots 41 and 77, which sold in 2010. Construction on both lots began in 2007. Petitioners introduced spreadsheets of costs incurred in the construction of homes on lots 41 and 77 and a limited number of canceled

[*14] checks, invoices, and other proof of payment for these amounts. Many of petitioners' reported costs did not include proof of payment, and their documents were riddled with duplicates. The costs petitioners deducted for lots 41 and 77 were incurred primarily in years before 2010.

For 2012 SRI reported COGS of $412,963. In calculating this number SRI reported additional section 263A costs of $12,963. These costs were for general expenses incurred at the Sterling Ridge subdivision and include payment for landscaping work and water bills on indeterminate lots in the subdivision. The Beverly Ridge Realty Corp. (Beverly Ridge) shared ownership of the subdivision with SRI. Beverly Ridge would pay expenses incurred for development of the Sterling Ridge subdivision, and SRI would reimburse it for the costs on the basis of its share of ownership, 72%. Petitioners substantiated payment of $12,963 for landscaping work in 2012.

For 2010 SRI claimed an office expense deduction of $60,000, which respondent disallowed entirely. To substantiate this deduction petitioners introduced a check for $25,000 made out to PPI as a transfer of funds. No other substantiation related to this deduction exists in the record. For 2012 SRI claimed a deduction for commission fees of $221,500 for transfers of funds to Rogers & Associates, PPI, and petitioners' son. Respondent disallowed this deduction in its

**[*15]** entirety.  Petitioners presented QuickBooks records and canceled checks to substantiate this deduction.  No Forms 1099-MISC, Miscellaneous Income, related to these payments were introduced in the record.

For 2012 SRI also claimed a deduction for legal fees of $92,000, which respondent disallowed.  SRI paid $2,000 to Fed Kan & Co. on behalf of a client of Mr. Rogers and $90,000 to Rogers & Associates.  The record contains no invoices for these payments.  Petitioners' QuickBooks records and canceled checks list three of the four 2012 payments to Rogers & Associates as transfers of funds.

III.    PPI's Deductions and COGS

For 2010 Mr. Rogers wholly owned PPI, which operated a general contractor business that performed work on the houses sold by SRI but did not own or hold any of the houses itself.  Mr. Rogers was its president and maintained its books and records; he was also PPI's sole director and managing broker for its real estate operations.  Mr. Rogers prepared its 2010 S corporation return, and petitioners reported Mr. Rogers' share (100%) of PPI's income or loss on their 2010 Schedule E.  In his notice of deficiency respondent disallowed COGS and other deductions claimed by PPI for 2010 and increased petitioners' share of income from SRI for 2010.

[*16] PPI was an accrual method taxpayer for 2010. For 2010 PPI reported COGS of $810,876. In calculating this number PPI reported additional section 263A costs of $1,791.

For 2010 PPI claimed a rent or lease deduction of $1,081 and a travel expense deduction of $1,456. Respondent disallowed both deductions. PPI's rent or lease deduction is in fact a travel deduction related in part to a car Mr. Rogers rented at the New Orleans International Airport on September 7-8, 2010. The record does not establish a purpose for Mr. Rogers' visit to New Orleans, nor an explanation for why PPI incurred this expense. Petitioners introduced QuickBooks records purporting to show PPI's travel expenses for 2010. Petitioners introduced no travel log, diary, or other contemporaneous record to substantiate PPI's claimed travel deduction.

IV.  Section 6662(a) Accuracy-Related Penalties

Revenue Agent Diane Linne examined petitioners' tax returns for 2010 and 2012. On April 30, 2014, Ms. Linne completed penalty approval forms for 2010 and 2012 and initially determined section 6662(a) accuracy-related penalties against petitioners for negligence or disregard of rules or regulations.

On July 16, 2014, Supervisory Revenue Agent Louis Olivieri, Ms. Linne's immediate supervisor, approved the initial determination to assess a penalty for

[*17] 2010 by signing the penalty approval form. On September 8, 2015, Mr. Olivieri also approved the 2012 initial determination to assess a penalty by signing that penalty approval form. Ms. Linne conducted her audit of petitioners' 2010 and 2012 returns from February 2014 through September 2015.

Respondent issued petitioners a notice of deficiency for 2010 on October 9, 2014, and for 2012 on June 21, 2016. In his notices of deficiency for both years respondent determined section 6662(a) penalties against petitioners for negligence or disregard of rules or regulations or, in the alternative, for substantial understatements of income tax or substantial valuation misstatements. Respondent's agent asserted the initial penalty determination and timely received written supervisory approval for a section 6662(a) penalty only for negligence or disregard of the rules or regulations. A 30-day letter was not issued for either year.

## OPINION

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer has the burden of proving the determinations are in error. Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioners made factual assertions in their briefs that are not supported by the record and referenced exhibits that were not admitted into the record. Statements on brief are not

**[*18]** evidence and cannot supplement the record. See Rule 143(c); Niedringhaus v. Commissioner, 99 T.C. 202, 214 n.7 (1992). Petitioners' opening brief failed to propose findings of fact or cite the record to support the facts recited as required by Rule 151(e). It consisted of nothing more than factual assertions in narrative form and occasional vague legal arguments. Petitioners' reply brief was submitted in the same format without citations of the record to support the factual assertions laid out. Petitioners have failed to assist the Court in making sense of the record in these cases. See Beane v. Commissioner, T.C. Memo. 2009-152, 2009 WL 1810731, at *3 (citing Stringer v. Commissioner, 84 T.C. 693, 703-705 (1985), aff'd without published opinion, 789 F.2d 917 (4th Cir. 1986)). Therefore, we have largely adopted respondent's proposed findings of fact, to which petitioners failed to object, except to the extent respondent failed to point to evidence in the record supporting a proposed finding or a proposed finding was clearly inconsistent with the record. See Jonson v. Commissioner, 118 T.C. 106, 108 n.4 (2002), aff'd, 353 F.3d 1181 (10th Cir. 2003).

**[\*19]** I.     <u>Deductions</u>[7]

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving he is entitled to claimed deductions.  Rule 142(a); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992).  To be entitled to a deduction a taxpayer "must be able to point to an applicable statute and show that he comes within its terms."  <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934).  A taxpayer must maintain records sufficient to allow the Commissioner to determine his correct tax liability.  Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.  A taxpayer has the burden of substantiating both the amount paid and the purpose of the expense underlying the claimed deduction.  <u>Higbee v. Commissioner</u>, 116 T.C. 438, 440 (2001).

---

[7]Petitioners raise in their brief a number of issues related to purported deductions that the parties settled before trial.  These include:  reimbursement expense deductions claimed on Rogers & Associates' Schedule C for 2010, which were settled by the fifth supplemental stipulation of settled issues paragraph 2 in docket No. 29356-14; taxes and licenses deductions claimed on Rogers & Associates' Schedule C for 2010, which were settled by the fifth supplemental stipulation of settled issues paragraph 1 in docket No. 29356-14; and legal and professional fee expense deductions claimed on Rogers & Associates' Schedule C for 2012, which were settled by the second supplemental stipulation of settled issues paragraph 3 and the third supplemental stipulation of settled issues paragraph 2 in docket No. 15112-16.  To the extent petitioners are seeking to advocate a position contrary to these settlements, we hold that their arguments are not supported by the record and their stipulations with respondent are binding.

**[*20]** A.    Casualty Loss Deduction

Taxpayers may deduct losses sustained in a taxable year and not compensated for by insurance or otherwise.  Sec. 165(a).  For individual taxpayers the deduction is limited to losses incurred in a trade or business, in any transaction entered into for profit, or otherwise if the loss arises "from fire, storm, shipwreck, or other casualty, or from theft."  Sec. 165(c).  Petitioners claim to have experienced a casualty loss not connected with their trade or business or a transaction entered into for profit.  Thus, to be deductible, the loss must result from physical damage to property and there must be a causal connection between the casualty and the loss.  Pulvers v. Commissioner, 407 F.2d 838, 839 (9th Cir. 1969), aff'g 48 T.C. 245 (1967); Kemper v. Commissioner, 30 T.C. 546, 549-550 (1958), aff'd, 269 F.2d 184 (8th Cir. 1959).

Petitioners' loss did not arise from fire, storm, or shipwreck; thus, to be deductible it must be the result of some "other casualty".  Other casualties are those "caused by a sudden, unexpected, or unusual event".  Maher v. Commissioner, 680 F.2d 91, 92 (11th Cir. 1982), aff'g 76 T.C. 593 (1981); see Appleman v. United States, 338 F.2d 729, 730-731 (7th Cir. 1964); Rev. Rul. 72-592, 1972-2 C.B. 101.  We find the list of casualties included by Congress in the text of section 165 to be especially illustrative of the kinds of losses that are

**[\*21]** entitled to deductions and considered other casualties. See Appleman, 338 F.2d at 730 ("In the absence of any congressional explanation of the phrase 'or other casualty' as used in the above section, the courts have turned to the traditional rule of ejusdem generis as an intrinsic guide to the construction and application of the term."). Section 165 includes losses arising from fire, storm, and shipwreck--all occurrences that arise suddenly and unexpectedly and are not everyday natural occurrences. Id. at 730-731 ("Among characteristics of the specific casualties enumerated in the section are suddenness and unforesee-ability of the occurrence. Fire and shipwreck are undesigned, sudden and unexpected events. While storms are to a degree predictable the factors of their violence and the particular site of loss or damage are uncertain."). Conversely, damage caused by "progressive deterioration of property through a steadily operating cause or normal depreciation" is not a casualty. Maher v. Commissioner, 680 F.2d at 92 (citing Rosenberg v. Commissioner, 198 F.2d 46, 49 (8th Cir. 1952), rev'g 16 T.C. 1360 (1951), and Fay v. Helvering, 120 F.2d 253 (2d Cir. 1941)).

Petitioners have claimed, for the first time in this litigation, that they are entitled to deduct a casualty loss for 2010 for damage resulting from a broken sewer line. No such loss was reported on their tax return for 2010. In order to deduct this loss, petitioners must first establish that a broken sewer line constitutes

[*22] a casualty. They have failed to do so. There is no indication as to the cause of the broken sewer line, and it can be assumed that such damage is nothing more than the eventual result of normal wear and tear. There is nothing to suggest the loss was sudden or caused by some natural disaster. Additionally, petitioners have failed to establish the loss was connected to their own property. The sewer line break occurred on their neighbor's sewer line, and some of the repair work was done on city property; but the record does not establish what work was conducted on petitioners' property. To be deductible, the loss must arise from damage to petitioners' property, not the property of others. See Draper v. Commissioner, 15 T.C. 135 (1950); see also Dosher v. United States, 730 F.2d 375 (5th Cir. 1984) (holding casualty loss deduction applies only to loss resulting from damage to taxpayer's property and does not include money taxpayer paid to reimburse third parties for damage taxpayer caused to their property); Pulvers v. Commissioner, 407 F.2d at 839 (not allowing a casualty loss for a decline in home value because of fear of landslides where a landslide caused damage to neighboring properties, but not to taxpayer's property). Petitioners have not established entitlement to any

**[*23]** casualty loss for 2010; therefore, we will not address the remaining issues relating to the amount of the loss.[8]

B.       Business Expense Deductions

Generally, taxpayers are allowed a deduction for any ordinary and necessary expense paid or incurred in the carrying on of a trade or business. Sec. 162(a). Additionally, a deduction is allowed for all ordinary and necessary expenses paid or incurred for the production of income. Sec. 212. Generally, no deduction is allowed for any personal, living, or family expenses. Sec. 262(a). While a taxpayer has the burden to substantiate expenses underlying all claimed deductions, heightened substantiation requirements apply for expenses relating to certain deductions such as those for travel, meals, and entertainment. Sec. 274(d). In order for the Court to sustain these deductions, a taxpayer must provide sufficient substantiating evidence that corroborates the amount of the expense, the

---

[8]Even if we found petitioners had established the occurrence of a casualty which could give rise to a deductible loss, the record fails to establish the fair market value of petitioners' residence immediately before or after the sewer line break. This information is required to determine the proper amount of loss. See sec. 1.165-7(a)(2), (b)(1), Income Tax Regs. The record also does not reflect whether petitioners submitted a claim for the payment to Kerrigan to an insurance company for reimbursement. Accordingly, there is nothing in the record to establish the amount of the loss to petitioners. See Teitelbaum v. Commissioner, 346 F.2d 266, 270 (7th Cir. 1965), aff'g T.C. Memo. 1964-141.

**[*24]** time and place of the travel or entertainment, the business purpose of the expense, and the business relationship to the person benefited by the expense. Id.

### 1. Legal and Professional Fees

Petitioners claimed deductions for legal and professional fees for 2010 of $681,414. The parties have stipulated that petitioners are entitled to deduct $7,523 in legal and professional fees for 2010; the remaining amount has not been resolved. Petitioners have the burden of substantiating their reported expenses. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs. Further, deductions for legal expenses are allowed only if they are related to a business or income-producing activity and are ordinary and necessary. Sec. 162(a).

The bulk of petitioners' claimed legal fees was paid to the K&W law firm. Petitioners attempted to substantiate their expenses by providing canceled checks and invoices. However, files relating to their claimed legal and professional fee expenses are disorganized and duplicative. Many of the invoices include no indication they were paid, and canceled checks corroborate payment for only a limited number of expenses. Additionally, several invoices indicate that the legal and professional work was personal in nature. Petitioners have a history of submitting chaotic records to this Court. See Rogers 2005-09, at *62.

[*25] Nonetheless, we have attempted to discern any substantiated deductible expenses from petitioners' jumbled records.

We were able to find both a canceled check and a related invoice to substantiate the payment of only $122,692 in legal fees to K&W. However, payment is only half the story. To be deductible, the legal fees must be ordinary and necessary to Rogers & Associates' business--a tax law practice. See sec. 162. Many of petitioners' K&W invoices were captioned "Personal", and petitioners offered little explanation for the business purpose of their various legal expenses. The records they provided show significant overlap between business and personal expenses.

Petitioners incurred $13,328 in K&W legal fees for an "IRS and FOIA project", but they provided no explanation of the purpose of these expenses. In addition, $67,268 in K&W legal fees was for "Personal" invoices. Petitioners admitted that these relate to K&W's representation of Mr. Rogers in a 2003 personal tax matter. Records petitioners submitted also suggest that personal invoices were related to arbitration with ALAS over a malpractice contract connected with the Mills litigation and separate litigation with Seyfarth to recover a portion of Mr. Rogers' capital account. However, petitioners did not elaborate further on these matters and the business purpose for Rogers & Associates.

**[\*26]** Petitioners also provided invoices from K&W's representation of Sugarloaf in litigation to recover an $800,000 loan Sugarloaf made to Marvin Redenius in 2008.[9]

Petitioners have failed to establish what business purpose Rogers & Associates had for incurring any amount of K&W legal expenses. In particular, as it relates to the personal expenses, petitioners have not explained why Rogers & Associates, a law firm that Mr. Rogers himself runs, should be responsible for incurring the legal fees of Mr. Rogers' personal litigation--including his 2003 personal tax matter, his dispute with Seyfarth, his arbitration with ALAS, and the Mills litigation. Even if petitioners had articulated a business purpose for some of these expenses, which they did not, they failed to parse their documentation in any meaningful way to show which expenses related to which matter. See Higbee v. Commissioner, 116 T.C. at 440 ("[T]he taxpayer bears the burden of substantiating the amount and purpose of the claimed deduction."). Additionally, although Mr. Rogers has admitted fault for making a bad loan on behalf of Sugarloaf to Mr. Redenius, he has not explained why Rogers & Associates should be able to deduct fees related to the resulting litigation. It appears instead that Mr. Rogers is

---

[9]Petitioners explain that they agreed to pay the legal fees for Sugarloaf to recover the loan from Mr. Redenius because it was Mr. Rogers' mistake and he was responsible for making the bad loan.

**[\*27]** attempting to deduct fees related to his personal litigation disputes under the guise of business expenses. We find that petitioners have failed to explain the business purpose of any of the K&W legal expenses and they are therefore not deductible under section 162.

Petitioners also claim a deduction for legal expenses paid to the law firm C&M, and they provided canceled checks and invoices to substantiate $69,676 paid to C&M. These expenses relate to the Mills litigation. Petitioners have failed to establish an ordinary and necessary business purpose, and therefore these expenses are not deductible under section 162. Additionally, petitioners have failed to explain the business purpose for reported expenses of $327 paid to Nutter McClennan for acting as discovery master in the Mills litigation, and they are therefore not deductible.

The only other legal expense for which we were able to find checks and invoices sufficient to substantiate payment was $6,512 paid to JAMS in relation to the arbitration between Mr. Rogers and ALAS. We have already explained that petitioners failed to explain a business purpose for expenses related to Mr. Rogers' arbitration with ALAS. Accordingly, petitioners are not entitled to deduct these expenses.

[*28] Finally, petitioners claim a deduction for nonlegal professional fees totaling $57,600 for "accounting services to help prepare client tax returns and assist with data gathering and organization of various legal matters." Petitioners presented invoices and checks substantiating the payment of $51,840 for these expenses. However, the invoices and petitioners' concession on brief reflect that $25,695 relates to petitioners' personal returns. While personal expenses are ordinarily not deductible, some expenses related to personal taxes are deductible subject to the 2% floor on miscellaneous itemized deductions. Secs. 212(3), 67(a). Accordingly the expenses related to petitioners' personal tax returns are deductible subject to the limitation for miscellaneous itemized deductions.

Rogers & Associates was a tax law practice; thus we find it ordinary and necessary for it to have hired an accountant for various client matters. We find that expenses of $25,650 relate to Rogers & Associates business and are therefore deductible under section 162.[10] Petitioners have failed to explain the business

_____

[10]Some of the $25,650 related to Rogers & Associates business was incurred for tax returns associated with Sugarloaf. Respondent argues that in Kenna Trading, LLC v. Commissioner, 143 T.C. 322 (2014), aff'd sub nom. Sugarloaf Fund, LLC v. Commissioner, 911 F.3d 854 (7th Cir. 2018), we held that expenses related to Sugarloaf are not deducible. In Kenna Trading we said that "expenditures made in an attempt to obtain abusive tax shelter benefits are not ordinary and necessary business expenses or otherwise deductible under section 162(a)." Id. at 365 (quoting Gerdau Macsteel, Inc. v. Commissioner, 139 T.C. 67,

(continued...)

**[\*29]** purpose of the remaining nonlegal professional expenses, and we therefore find them not deductible. Respondent's other determinations are sustained except to the extent stated herein.

### 2. Meals and Entertainment

Petitioners claimed deductions related to meals and entertainment on their 2010 Schedule C for Rogers & Associates of $778. Respondent disallowed these deductions in their entirety. Deductions for entertainment, including meals, are subject to heightened substantiation requirements. Sec. 274(d). No such deduction may be allowed unless the taxpayer can substantiate: (1) the amount of the expense; (2) the time and place of the expense; (3) the business purpose of the expense; and (4) the business relationship between the taxpayer and anyone benefiting from the expense. Sec. 274(d); sec. 1.274-5T(b)(3), Temporary Income Tax Regs., 50 Fed. Reg. 46015 (Nov. 6, 1985). To substantiate the reported meal and entertainment expenses, petitioners provided receipts and offered testimony regarding some expenses.

---

[10](...continued)
182 (2012)). The accountant expenses incurred by Rogers & Associates are not of the same nature as those in Kenna Trading. They do not relate to developing the tax shelter but rather to tax advice to clients provided by a third party; accordingly, we find they have an ordinary and necessary business purpose and are deductible.

[*30] Mr. Rogers attempted during his trial testimony to articulate a business purpose for some expenses. However, this testimony alone, without "adequate records" or "sufficient evidence corroborating" his testimony, fails to meet the rigorous substantiation requirements of section 274(d). See generally sec. 1.274-5T(c), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985) (explaining what is required to meet the substantiation requirements under section 274(d)). The record does not reflect who paid for the meals and entertainment, and many of petitioners' documents are faded and illegible. In addition, the records contain duplicate receipts, and some of the duplicates are notated with different explanations for their purported purpose. We find petitioners have failed to adequately justify a deduction for any of their reported meal and entertainment expenses under section 274(d).

Petitioners argue that these expenses were for "local meals for business meetings and staff meetings and special events." That does not absolve petitioners from having to meet the heightened substantiation requirements under section 274(d). Section 274(k) provides additional limitations on allowing deductions for "business meals", but nothing in subsection (k) "relieves the taxpayer of complying with the substantiation requirements of (d)". See Sanford v. Commissioner, 50 T.C. 823, 833 (1968) (discussing the relationship between

**[\*31]** section 274(d) and subsection (e), previously the business meals provision), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969). Thus, we sustain respondent's determination to disallow the deduction of petitioners' meal and entertainment expenses in their entirety.

3. Travel

Deductions for traveling expenses are also governed by the strict substantiation requirements of section 274(d). Petitioners claimed a travel expense deduction on Schedule C for Rogers & Associates of $16,327 for 2010; respondent disallowed the full amount. Mr. Rogers testified that he lost his diary for 2010, but created a log of his activities "more or less contemporaneously". Mr. Rogers provided the log along with his testimony and other documents in an attempt to substantiate his travel expenses. However, Mr. Rogers' trial testimony was brief and contradicted the travel log and other documentation petitioners provided. Additionally, several of the documents--i.e., boarding passes, hotel portfolios, and airline receipts--included trips that did not appear on the travel log; and like many of petitioners' records, the documentation was disorganized and included several of the same receipts petitioners presented to substantiate their meal and entertainment expenses. Given the problems with petitioners' documentation and their inability to satisfactorily explain the business purpose for

[*32] their travel, we find that they have failed to satisfy the substantiation requirements of section 274(d). Therefore, respondent's determination is sustained, and petitioners' travel expense deduction is disallowed.

4. Other Issues

Petitioners claimed $200,000 in returns and allowances for 2010, which respondent disallowed in his notice of deficiency. Petitioners further claimed deductions for insurance other than health of $20,473 for 2012, of which respondent disallowed $8,759. Petitioners failed to address either of these issues on brief and only briefly referenced them at trial. In addition, the documentation petitioners introduced into the record relating to each of these deductions is generally unsupportive. On this record, it is difficult for petitioners to meet their burden of proof. See Rule 142(a).

a. Returns and Allowances

Gross income includes all income from whatever source derived. Sec. 61. However, taxpayers with business income are allowed to offset the gross receipts of their business with COGS and returns and allowances when computing the business' gross income. See Smith v. Commissioner, T.C. Memo. 2015-214, at *11; sec. 1.61-3(a), Income Tax Regs. Although returns and allowances are not technically deductions, taxpayers must still retain sufficient records to substantiate

[*33] the amount of returns and allowances claimed.  Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

Mr. Rogers' trial testimony on this issue was cursory, but it appears that he is attempting to calculate the amount of returns and allowances from bad debts in the form of uncollectible accounts receivable.  Section 166 allows a deduction for debts which become worthless during the taxable year.  Petitioners' submitted QuickBooks records related to their accounts receivable for 2009, 2010, and 2012; however, these documents do not establish any amount of uncollectible accounts receivable.  There is nothing else in the record to explain how petitioners calculated their returns and allowances.  Petitioners offered incomplete and confusing testimony on this issue and have failed to explain why they viewed any uncollected accounts receivable as bad debts or otherwise deductible for 2010.  We find that petitioners have failed to meet their burden of proof to substantiate either an offset of gross receipts by returns and allowances or a bad debt deduction under section 166; therefore, respondent's determination in his notice of deficiency is sustained.

**[*34]**          b.          <u>Disability Insurance</u>

Section 162 generally allows for taxpayers to deduct all ordinary and necessary business expenses from their calculation of taxable income, and section 212 generally allows a deduction for ordinary and necessary expenses incurred for the production of income.  However, no deduction is allowed for personal, living, or family expenses absent a Code provision specifically allowing such a deduction.  <u>See</u> sec. 262.  Petitioners deducted $2,473 for disability insurance premiums for 2012 and produced Quickbooks records and invoices to substantiate this payment.

Although petitioners have substantiated their disability insurance payment for 2012, they have made no credible attempt to articulate its deductibility under a provision in the Code.  There is nothing in the record indicating that this disability insurance was tied to petitioners' business or to the production of income.  Mr. Rogers testified he believed the insurance should be deductible as "insurance protection * * * deductible under section 162 or 212(3) because it was [his] personal earnings being insured from disability."  However, neither section 162 nor section 212--offering deductions for business expenses and expenses incurred for the production of income--provides a deduction for the cost of disability insurance.  Additionally, petitioners have pointed us to no Code section allowing a

[*35] deduction for personal disability insurance costs.  Petitioners have failed to meet their burden to establish the deductibility of this expense.  Accordingly, respondent's determination to disallow $8,759 of petitioners' 2012 deductions for insurance other than health is sustained.[11]

## C.    Reddy Lab and PTI Bad Debt Deductions

Petitioners appear to seek worthless debt or worthless stock deductions for 2010 as a result of their activities with Reddy Lab and PTI.  Petitioners' arguments regarding these deductions are confusing and inconsistent and appear largely similar to arguments addressed by this Court previously.  See Rogers 2005-09, at *55.  Petitioners argue they are entitled to:  (1) a $1.3 million worthless debt deduction for amounts owed by Reddy Lab; (2) an $808,000 worthless debt deduction for amounts owed by PTI; and (3) a $2 million worthless debt deduction for Lucas & Rogers' claims against PTI or a worthless stock deduction for Lucas

---

[11]Petitioners did not address the remaining amount of their disallowed insurance other than health deduction for 2012.  Therefore, they have conceded the issue, and we sustain respondent's determination disallowing an $8,759 deduction.

**[\*36]** & Rogers' PTI stock.[12] We have already addressed each of these issues. See generally id. at \*55-\*61.

Petitioners are not entitled to a $1.3 million worthless debt deduction for amounts owed by entities within the Reddy Lab structure. Section 166 allows a worthless debt deduction if: (1) there was a transfer that created a valid debt and not an equity contribution, (2) the debt became worthless during the year at issue, and (3) the debt was incurred in connection with a trade or business. Sensenig v. Commissioner, T.C. Memo. 2017-1, at \*17-\*18, aff'd, 720 F. App'x 139 (3d Cir. 2018); sec. 1.166-1(c), Income Tax Regs. A worthless nonbusiness debt is deductible as a short-term capital loss. Sec. 166(d)(1); sec. 1.166-5(a)(2), Income Tax Regs. In Rogers 2005-09, at \*57-\*58, we held petitioners failed to show that they qualify for a worthless debt deduction under section 166 for amounts owed by Reddy Lab. Specifically, petitioners failed to establish that there was a debt in excess of amounts previously deducted. Id. at \*57. Petitioners have presented no new arguments and offered no new documents to sway the Court. Accordingly, we reaffirm our holding in Rogers 2005-09.

---

[12]Petitioners' briefs are difficult to decipher, but it appears they no longer claim a $1.3 million worthless debt deduction for amounts owed by Reddy Lab. Nonetheless, for the sake of completeness, we address it briefly here only to note that we have already ruled on the issue.

[*37] Likewise, petitioners have failed to show they are entitled to an $808,000 worthless debt deduction for amounts owed by PTI. In Rogers 2005-09, at *59, we held that petitioners failed to establish that a valid debtor-creditor relationship existed between Mr. Rogers and PTI. Petitioners have offered no new arguments or evidence to persuade us to change our holding. Finally, in Rogers 2005-09, at *55, we held that Lucas & Rogers assigned its $2 million in claims against Reddy Lab to PTI in exchange for stock; therefore, no worthless debt deduction was permitted. We did not address whether petitioners could be allowed a worthless stock deduction for PTI stock owned by Mr. Rogers and Lucas & Rogers because those issues were not properly before the Court. Id. at *55-*56. Although petitioners raise the issue of a worthless stock deduction for PTI stock held by Mr. Rogers and Lucas & Rogers for the first time in their pretrial memorandum, the record is completely devoid of any documentation or testimony to substantiate their claim. Accordingly, we hold petitioners have failed to show they are entitled to any worthless debt or worthless stock deduction related to Lucas & Rogers' claims against PTI or Lucas & Rogers' PTI stock.

D.    Net Operating Loss

Petitioners argue they are entitled to a net operating loss carryforward deduction from 2008 following computation of their tax liability for 2009.

**[*38]** Generally, taxpayers may claim a net operating loss deduction for the amount of allowable deductions over gross income. Sec. 172(c). Net operating losses may be carried forward to each of the next 20 taxable years following the tax year of the loss, and carried back to each of the two taxable years preceding the tax year of the loss. Sec. 172(b)(1)(A). The issue of a net operating loss carryforward is computational and can be determined under Rule 155 in the decision documents to be submitted by the parties. Accordingly, our holding does not address whether petitioners have any net operating loss carryforward from 2008 remaining.

E.     PTI Subsidy Payments

Petitioners suggest they are entitled to deductions for "additional subsidy" and legal fees paid by PPI to PTI in 2004, 2005, and 2006. Petitioners present no legal argument as to why they are entitled to deductions for the amounts paid, and the payment of such amounts is not supported by the record in these cases. Accordingly, we hold petitioners are not entitled for 2010 or 2012 to deductions related to any subsidy payments or legal fees paid by PPI to PTI in 2004, 2005, and 2006.

**[*39]** II.    SRI's Deductions and COGS

Respondent disallowed SRI's COGS of $775,173 and $412,963 entirely for 2010 and 2012, respectively.  In addition, respondent disallowed the following SRI deductions still in dispute:  office expenses of $60,000 for 2010; commission fees of $221,500 for 2012; and legal expenses of $92,000 for 2012.

A.    SRI's COGS

1.    2010

In Rogers 2005-09, COGS claimed by SRI and PPI were in issue.  The parties have agreed that SRI's COGS will be determined as flows forward from our decision in that case and will be bound by our determinations as to the amount of costs petitioners substantiated, how COGS should be calculated, the proper tax treatment of property transferred by Mrs. Rogers to SRI, and whether petitioners sold land to SRI or made a capital contribution.  In Rogers 2005-09, at *48, we held that Mrs. Rogers' transfer of land to SRI was a capital contribution, not a sale, and therefore SRI held the land with a carryover basis.  We also found that the land's carryover basis was $15,000.  Id. at *14-*15.  The parties shall recalculate SRI's COGS for 2010 and 2012 in accordance with our opinion in Rogers 2005-09.

**[\*40]** However, SRI's reported other costs for 2010 of $388,015 are still in dispute. Respondent concedes that certain other costs may be included in petitioners' calculation of COGS for 2010 but disputes that petitioners have substantiated all of the other costs. These other costs are related to lots 41 and 77, which were both sold in 2010. Petitioners provided voluminous documentation to substantiate their costs related to these lots. However, like most of petitioners' records, their documents consisted of large numbers of invoices with no proof of payment, proof of payment with no indication of what it was for, and duplicates. Petitioners' documents also pertained to many costs incurred for years before 2010. SRI should have capitalized its costs relating to lots 41 and 77 in the year they were incurred. See sec. 1.446-1(c)(1)(ii), Income Tax Regs. Construction began on lots 41 and 77 in 2007, and petitioners' documents trace back that far. Accordingly, we assume that costs incurred before 2010 were already considered in SRI's COGS calculations, and we will not count them as other costs listed for 2010.[13]

---

[13]Mr. Rogers testified: "To the best of my knowledge, none of these items were deducted prior to 2010. And we just take the aggregate cost over the years; we capitalize those, and then we deduct it in the year that the house is sold." Mr. Rogers' self-serving testimony offers us little comfort that these expenses were not capitalized in prior years and already included in SRI's COGS.

**[\*41]** After reviewing petitioners' documents--discounting duplicates, records that failed to establish payment or the purpose of payment, and costs incurred before 2010--we have found petitioners substantiated other costs for 2010 of $13,547, which includes $12,572 and $975 for lots 41 and 77, respectively.[14]  Accordingly, this is the only amount petitioners may include in calculating their other costs for 2010.  We note also that petitioners' documents included confirmation of a $50,000 payment to their son for the sale of lot 77.  This payment appears to be a commission fee and is clearly not deductible as a cost in calculating petitioners' COGS.  Its inclusion in petitioners' documents attempting to substantiate COGS is particularly troubling given petitioners' apparent attempts to double deduct commission fees under a number of guises on their returns.

  2. 2012

  For 2012 SRI claimed COGS of $412,963.  After stipulations, remaining at issue is $12,963 of additional section 263A costs incurred for general maintenance expenses in 2012.  Petitioners believe this amount is includible as COGS and

---

  [14]The appendix references the amounts we sustain as other costs with respect to lots 41 and 77 for 2010.  Petitioners also contend that $209,901 of their reported other costs were for property taxes and therefore are deductible for the year incurred and should not be capitalized.  However, the record is completely void of any proof of property taxes incurred by SRI in 2010.  Accordingly, we do not address this argument.

**[\*42]** deductible for 2012, the year it was incurred.  Respondent argues that the costs should be capitalized into the remaining lots SRI held at the end of the year.

Generally, no deduction is allowed for any amount paid for new buildings or permanent improvements to increase the value of property.  Sec. 263.  Instead, section 263A(a) provides that for certain property, direct and indirect costs allocable to such property must be capitalized.  See sec. 1.263A-1(a)(3)(I), Income Tax Regs.  Among the kinds of property to which section 263A applies is real property produced or acquired by the taxpayer for resale.  Sec. 263A(b).  Section 263A costs which must be capitalized include SRI's additional section 263A costs, which were incurred for general maintenance of the Sterling Ridge subdivision.  See sec. 1.263A-1(d)(3) and (4), Income Tax Regs.  Thus, under section 263A SRI is required to capitalize the $12,963 claimed as additional section 263A costs, to the extent petitioners substantiate such expenses.

Petitioners introduced canceled checks and invoices and provided testimony to substantiate their additional section 263A costs for 2012.  Beverly Ridge paid the expenses related to general maintenance of the subdivision–such as water bills and landscaping--and SRI would reimburse it in accordance with its 72% ownership of the subdivision.  Petitioners' records show invoices, Beverly Ridge's canceled checks, and two checks from SRI to Beverly Ridge.  On this record, we

**[*43]** find petitioners substantiated $12,963 in additional section 263A costs for 2012.

SRI's substantiated section 263A costs having been determined, SRI must now capitalize them to the 11 lots that remained on hand at the end of the 2012 taxable year. See sec. 1.263A-1(c), Income Tax Regs. Section 263A does not provide for immediate deduction to recover costs, but rather "[c]osts that are capitalized under section 263A are recovered through depreciation, amortization, cost of goods sold, or by an adjustment to basis at the time the property is used, sold, placed in service, or otherwise disposed of by the taxpayer." Sec. 1.263A-1(c)(4), Income Tax Regs. Thus, SRI is not entitled to a deduction for its $12,963 in additional section 263A costs incurred in 2012 but must instead capitalize those costs to the lots remaining at the end of the taxable year and recover those costs upon sale or other disposition of the lots.[15]

---

[15]Sec. 1.263A-1(c)(5), Income Tax Regs., provides: "A cost that is allocated under this section * * * entirely to property sold must be included in cost of goods sold and may not be included in determining the cost of goods on hand at the end of the taxable year." Petitioners have not shown that any of their claimed additional sec. 263A costs are allocable "entirely" to property disposed of in 2012. Therefore, the full amount must be capitalized to the lots remaining at the end of the year.

[*44] B.    SRI's Deductions

1.    2010

SRI claimed an office expense deduction of $60,000 on its 2010 return, all of which respondent disallowed. Petitioners offered no testimony regarding this expense at trial. The only documentation in the record relating to this expense is a check for $25,000 to PPI, which is referenced as "Funds transfer" in petitioners' records. Petitioners' brief explains that the $60,000 deduction comprised "$50,000 reimbursement of PPI payroll; [and a] $10,000 reimbursement of rent at 55 West Monroe Street in downtown Chicago." Neither of these assertions is supported by the record. Accordingly, petitioners have failed to substantiate a $60,000 deduction for office expenses, and respondent's determination is sustained.

2.    2012

a.    Commission Fees

SRI claimed a deduction of $221,500 for commission fees for 2012, all of which respondent disallowed. Taxpayers are entitled to deduct all ordinary and necessary expenses paid or incurred in a trade or business. Sec. 162(a). Petitioners presented QuickBooks records and canceled checks for $226,500 ($5,000 over the amount claimed on their 2012 return) made out to Rogers &

[*45] Associates, petitioners' son, and PPI. According to Mr. Rogers, SRI paid $20,000 to Rogers & Associates for assistance with selling the lots in the Sterling Ridge subdivision and $11,000 to his son for his help with the subdivision and marketing. Petitioners' documents support these payments but show that the amount to Rogers & Associates was a transfer of funds and the amount to petitioners' son was for the sale of certain lots in the Sterling Ridge subdivision. The remaining $195,500 was paid to PPI and included payments for payroll expenses, a commission on the sale of lot 56, and transfers of funds. Mr. Rogers explained that he transferred money from SRI to PPI to reimburse PPI for its expenditures during a downturn in the market, and that he thought those transfers should be deductible to SRI.

Mr. Rogers testified that he was not sure whether his son included the amounts in income; and aside from petitioners' own statements on brief, the record does not reflect that any of these payments to the three recipients were actually included in income. In addition, there were no Forms 1099-MISC introduced into the record relating to these payments.

Petitioners have failed to establish the business purpose of their claimed commission fees as required under section 162. Other than their own self-serving testimony, petitioners have offered no evidence to show these payments reflect

**[\*46]** anything more than transfers between their wholly owned entity SRI and their son, law firm, and other wholly owned entity PPI. We are not required to accept petitioners' self-serving testimony and briefs. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Accordingly, to the extent the documentation petitioners introduced shows payments by SRI, the expenses are nevertheless not deductible under section 162. Petitioners have not suggested any other section of the Code which may give rise to a deduction for these expenses. Thus, respondent's determination disallowing all of SRI's claimed commission fees deduction is sustained.[16]

### b. Legal Expenses

SRI claimed a deduction for legal and professional fees of $92,000 for 2012, which respondent disallowed entirely. This deduction is for expenses

---

[16]Respondent also suggests that some of the claimed commission fee expenses may have already been deducted and that petitioners are attempting to receive a double deduction for them. The commission fees include a $7,000 check to petitioners' son for the sale of lot 29 and a $4,000 check for the sale of unspecified lots in the Sterling Ridge subdivision. PPI also deducted $7,000 as a "sales bonus" for payment made to petitioners' son from PPI as a bonus for the sale of lot 56 of the Sterling Ridge subdivision in 2012. The commission fee documents further reflect a $10,000 check from SRI to PPI for a commission for the sale of lot 56, and we have noted that petitioners attempted to claim a $50,000 commission payment to their son as part of their COGS for 2012. In the light of petitioners' poor bookkeeping and disorganized recordkeeping we find it likely that some of these expenses were indeed already deducted by other entities wholly owned by petitioners or by petitioners themselves.

[*47] allegedly paid by SRI to two law firms:  Rogers & Associates and Fred Kan & Co.[17]  In 2012 SRI paid $2,000 to Fred Kan & Co. on behalf of one of Mr. Rogers' clients.[18]  It was later reimbursed for this amount.  There is no explanation in the record as to why SRI would pay legal fees on behalf of one of Mr. Rogers' clients.  Additionally, on brief petitioners admit that "[t]he $2,000 is properly deducted by Rogers & Associates."  It is unclear from this admission whether petitioners are trying to claim a double deduction for fees that were already deducted by Rogers & Associates or acknowledging that SRI is not entitled to the deduction and instead seeking a deduction for Rogers & Associates.  In any event, we find that they have failed to satisfy their burden of showing respondent erred in disallowing this deduction.

The remaining $90,000 in reported legal fees was paid to Rogers & Associates.  However, petitioners introduced no invoices for the legal work allegedly performed by Rogers & Associates.  Instead, the only documentation

---

[17]Petitioners also introduced documentation for $3,844 in legal fees paid by SRI to Peabody & Arnold LLP.  However, the parties have stipulated that those documents should be disregarded as that amount was already allowed under Schedule C as legal and professional fees for 2012.

[18]Petitioners also provided a bill from Fred Kan & Co. for $1,200; however, this amount is unrelated to the $2,000 paid by SRI to Fred Kan & Co. in 2012, and they introduced no documentation showing this bill was paid by SRI.  Therefore, we will disregard it.

[*48] petitioners introduced to substantiate SRI's deduction--QuickBooks entries and canceled checks--lists three of the four payments to Rogers & Associates as transfers of funds.  Petitioners' failure to substantiate a business purpose for the $90,000 payment to Rogers & Associates is even more troubling.  Petitioners control SRI and Rogers & Associates; their attempt to deduct money that was transferred between these two entities appears to be a gross abuse of the Code.  There is nothing in the record to show that Rogers & Associates included this amount in its income.  Mr. Rogers explained that these amounts were paid to Rogers & Associates for management, administration, closings of transactions, and other matters in 2012.  However, we find his testimony on this matter lacking credibility.  Without more, we are unable to find that these fees were properly owed to Rogers & Associates, and petitioners have not shown SRI is entitled to a deduction for them.  Therefore, respondent's determination to disallow the claimed legal fees deduction in its entirety is sustained.

[*49] III.     PPI's Deductions and Cost of Goods Sold[19]

For 2010 respondent disallowed PPI's COGS of $810,876.  Petitioners reported a loss from PPI for 2010 of $1,195,889.[20]  In addition, respondent disallowed the following PPI deductions still in dispute for 2010:  rent or lease of $1,081 and travel of $1,456.

A.     PPI's 2010 COGS

For 2010 PPI was operated as a general contractor responsible for the construction work performed on lots owned by SRI.  Petitioners argue that PPI's COGS stem from the 2010 sale of lot 77.  However, the record shows that lot 77 was held and sold by SRI in 2010, not PPI, and we have already addressed the sale of lot 77 in discussing SRI's claimed COGS for 2010 supra pp. 39-41.  In fact, the record shows that PPI held no lots itself at the beginning of 2010 and sold no lots,

---

[19]Petitioners raise on brief whether PPI is entitled to deduct dues and subscriptions for 2010.  This issue was settled by the fifth supplemental stipulation of settled issues paragraph 3 in docket No. 29356-14.  To the extent petitioners are seeking to advocate a position contrary to the settlement, we hold that their arguments are not supported by the record.

[20]The parties have stipulated that petitioners' loss from PPI of $1,195,889 was reported in error and that the actual loss petitioners should have reported on the basis of PPI's corporate return was $398,875.  Nonetheless, deductions related to calculating PPI's loss for 2010 remain in dispute, and the actual income or loss amount attributable to PPI for 2010 and assigned to petitioners must be calculated in accordance with this opinion.

[*50] homes, or other goods during the year. Nothing in the record substantiates PPI's claimed COGS for 2010, and respondent's determination is sustained.

### B. PPI's 2010 Deductions

#### 1. Rent or Lease

PPI claimed a rent or lease expense deduction of $1,081 for 2010, which respondent disallowed. The only evidence petitioners introduced to substantiate this expense was related to a rental car expense incurred in New Orleans on September 7, 2010. No other evidence in the record purports to substantiate PPI's claimed rent or lease expense. Petitioners made no attempt to explain why a rental car expense would be deductible as rent or lease and provided no documentation to show the expense was actually paid. At trial Mr. Rogers admitted that the expense was in fact for travel and entertainment and acknowledged that he rented the car to attend an American Bar Association meeting in New Orleans. However, this explanation fails to provide a business justification as to why PPI, which operates a general contractor business, incurred an expense related to a conference generally attended by legal professionals. Further, petitioners presented a new explanation for this expense in their brief: that it was incurred on a trip to Baton Rouge related to Sugarloaf. Whatever purpose the expense was actually incurred for, to deduct it as a travel expense petitioners must comply with the heightened

[*51] substantiation requirements under section 274(d). On this record, petitioners have failed to substantiate the expense, and respondent's determination is sustained.

2.   Travel

PPI claimed travel expense deductions for 2010 of $1,456, which respondent disallowed entirely. As we have previously explained, section 274(d) imposes heightened substantiation requirements to deduct expenses related to travel. The only documentation petitioners presented were QuickBooks records purporting to show these expenses. These records alone are not enough to substantiate that the expenses were actually paid or to explain the business purpose for each expense. Petitioners presented no log book, diary, or other contemporaneous documentary evidence that could support their deductions. Mr. Rogers attempted to explain some of these expenses at trial and on brief, but with only petitioners' self-serving statements and unsupported QuickBooks records to rely on petitioners have failed to meet the heightened substantiation requirements under section 274(d) for PPI's claimed travel expense deductions for 2012.

IV.   Section 6662(a) Accuracy-Related Penalties

Respondent determined accuracy-related penalties under section 6662(a) of $188,149 and $48,783 for 2010 and 2012, respectively. Section 6662 applies

[*52] when there is an underpayment of tax that was required to be shown on a taxpayer's return, and it imposes an accuracy-related penalty of 20% of the portion of the underpayment attributable to: (1) negligence or disregard of rules or regulations, (2) any substantial understatement of income tax, or (3) any substantial valuation misstatement. Sec. 6662(a) and (b)(1), (2), and (3). Respondent bears the burden of production and must present sufficient evidence that the penalty determinations were proper. Sec. 7491(c); Higbee v. Commissioner, 116 T.C. at 446. Respondent must also demonstrate that he met the requirements of section 6751(b)(1), i.e., that written supervisory approval of the initial determination of each penalty was obtained before that penalty was actually assessed. Chai v. Commissioner, 851 F.3d 190, 221 (2d Cir. 2017), aff'g in part, rev'g in part T.C. Memo. 2015-42; Graev v. Commissioner, 149 T.C. 485, 493 (2017), supplementing and overruling in part 147 T.C. 460 (2016). In Clay v. Commissioner, 152 T.C. __, __ (slip op. at 44) (Apr. 24, 2019), we held that the Commissioner must show that written supervisory approval was obtained before the proposed penalties were first formally communicated to the taxpayer in a writing that also advised the taxpayer of his right to appeal the penalties with the Internal Revenue Service Office of Appeals. Thus, in Clay a 30-day letter with an attached revenue agent's report constituted the initial determination to assess the

[*53] penalties proposed therein for purposes of section 6751(b).  Id.  Once the Commissioner has satisfied his burden, the taxpayer bears the ultimate burden of proof to show the penalty determination is incorrect.  Rule 142(a); Higbee v. Commissioner, 116 T.C. at 447.

We will turn first to respondent's burden to prove the requisite written supervisory approval was obtained under section 6751(b).  Mr. Olivieri approved the initial penalty determinations for petitioners' 2010 and 2012 tax returns, and the parties stipulated the supervisory penalty approval forms for the years at issue.  The initial determination to assess section 6662(a) penalties against petitioners for 2010 and 2012 was made by Ms. Linne over the course of her examination of petitioners' 2010 and 2012 tax returns.  Ms. Linne completed penalty approval forms for both years on April 30, 2014, during the audit of petitioners' returns.  The initial penalty determinations asserted a section 6662(a) penalty for 2010 and 2012 on the basis of negligence or disregard of rules or regulations.  The supervisory penalty approval forms were signed on July 16, 2014, and September 8, 2015, for the taxable years 2010 and 2012, respectively.  Approval for the initial determination of penalties for both years was secured timely during the audit of petitioners' returns.  There was no 30-day letter or Appeals consideration of this case.

**[*54]** The notices of deficiency were mailed October 9, 2014, and June 21, 2016, for the taxable years 2010 and 2012, respectively. In the notices of deficiency, respondent determined section 6662(a) penalties against petitioners for 2010 and 2012 on the basis of negligence or disregard of rules or regulations. Respondent also asserted alternative positions for determining the penalties--i.e., any substantial understatement of income tax or any substantial valuation misstatement. However, there was no proper written approval for a section 6662(a) penalty for 2010 or 2012 on these alternative grounds. Therefore, respondent has met his burden under section 6751(b) to show written supervisory approval was obtained before communication of the initial determination of accuracy-related penalties in the notices of deficiency, but only on the basis of negligence or disregard of rules or regulations.[21]

We must now turn to respondent's burden of production to show that the negligence penalties were appropriate in the absence of available defenses. Graev v. Commissioner, 149 T.C. at 493. Negligence is defined under section 6662(c) as "any failure to make a reasonable attempt to comply with the provisions of" the

_____

[21]Respondent does not concede the sec. 6662(a) penalties on the alternative basis of substantial valuation misstatement or substantial understatement of income tax. However, in the light of our holding on compliance with sec. 6751(b), we do not address those alternative grounds and focus our analysis on negligence as a basis for determining the penalties for 2010 and 2012.

**[\*55]** Code, and disregard is defined as "any careless, reckless, or intentional disregard." Petitioners are both highly educated attorneys licensed to practice in Illinois in 2010 and 2012. Mr. Rogers, who prepared petitioners' tax returns for 2010 and 2012, is a tax attorney who has practiced law since 1969. In 2008 Mr. Rogers formed his own law practice, Rogers & Associates, which he maintained operating through the 2010 and 2012 tax years. We have discussed petitioners' education and employment background in the past as well. See Rogers 2005-09, at \*5-\*6. In the light of their education and training, petitioners failed to establish that they made a reasonable attempt to comply with the rules and regulations governing Federal tax and that they did not carelessly, recklessly, or intentionally disregard the provisions of the Code. We have also discussed extensively petitioners' sloppy recordkeeping. This further supports a determination that petitioners exhibited negligence by failing to maintain adequate books and records to substantiate and reconcile their reported income and expenses. See sec. 1.6662-3(b), Income Tax Regs. On this record, we find that respondent satisfied his burden of production to show that petitioners acted with negligence or disregard of rules or regulations when filing their 2010 and 2012 returns and thus that imposition of the penalties was appropriate.

**[*56]** Because we have found that respondent met his burden, petitioners must now satisfy the burden of proving that the penalties were improper. Accuracy-related penalties will not apply to any portion of an underpayment with respect to which the taxpayers can show they acted with reasonable cause and in good faith. Sec. 6664(c)(1). Petitioners have made no attempt to show that they meet this exception. Accordingly, respondent's determination of accuracy-related penalties for the 2010 and 2012 tax years is sustained.[22]

In reaching our holding, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.

---

[22]Our holding does not foreclose Mrs. Rogers' opportunity to argue her relief from liability, including penalties, under sec. 6015 in subsequent proceedings before this Court. We have severed that portion of these cases and leave for subsequent consideration whether she is liable for penalties and tax deficiencies in accordance with this opinion.

**[\*57]**                                                    APPENDIX

### 2010 SRI Other Costs From Lots 41 and 77

| Date | Lot | Contractor | Description | Amount substantiated |
|---|---|---|---|---|
| 11/28/2010 | 41 | En-Co Plumbing Inc. | Replace plumbing parts | $185 |
| 7/31/2010 | 41 | Complete Drywall & Taping, Inc. | Drywall repair | 270 |
| 7/20/2010 | 41 | GM Trim | Replacement trim work | 300 |
| 7/20/2010 | 41 | Tri-Star Cabinet & Top Co., Inc. | Replacement shoe & trim | 300 |
| 7/26/2010 | 41 | Cambridge Painting & Decorating | Painting touch-up | 518 |
| 11/1/2010 | 41 | Crawford Supply Co. | Bathroom fixtures | 529 |
| 10/18/2010 | 41 | DesignTek Surveying LLC | Final grading survey | 550 |
| 7/2/2010 | 41 | Tri-Star Cabinet & Top Co., Inc. | Repair doors & moulding | 634 |
| 7/19/2010 | 41 | Southwest Fireplace | Log sets | 820 |
| 7/28/2010 | 41 | All Secure, Inc. | Stereo installation | 1,071 |
| 10/17/2010 | 41 | Schaaf Window Co., Inc. | Shower door & custom sliding door | 1,185 |
| 10/14/2010 | 41 | Ideal Design Integration | Closets | 1,735 |

**[*58]**

| | | | | |
|---|---|---|---|---|
| 6/16/2010 | 41 | M.J. O'Neil Contractors | Replace bathroom floor | 4,475 |
| 6/8/2010 | 77 | Nephin Construction | Framing and installation of basement door | 425 |
| 5/10/2010 | 77 | DesignTek Surveying LLC | Final grading survey | 550 |
| Total | | | | 13,547 |